RICHARD D. McCUNE, State Bar No. 132124
rdm@mccunewright.com
DAVID C. WRIGHT, State Bar No. 177468
dcw@mccunewright.com
MCCUNEWRIGHT LLP
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs and the Proposed Class*

*[LIST OF ADDITIONAL COUNSEL ON SIGNATURE PAGE]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LEWIS, DANIELLE HALL, and JC MONTGOMERY, On Behalf of themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GREEN DOT CORPORATION; GREEN DOT BANK; MASTERCARD INCORPORATED; and MASTERCARD INTERNATIONAL INCORPORTED, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR:** <br> **(1) NEGLIGENCE;** <br> **(2) UNJUST ENRICHMENT;** <br> **(3) BREACH OF CONTRACT;** <br> **(4) CONVERSION;** <br> **(5) VIOLATION OF FALSE ADVERTISING ACT, CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.;*** <br> **(6) VIOLATION OF UNFAIR BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*** <br><br> **DEMAND FOR JURY TRIAL** |

1

# TABLE OF CONTENTS

2

*Page*

3  INTRODUCTION ..................................................................................................... 1

4  THE PARTIES .......................................................................................................... 2

5        Plaintiffs ......................................................................................................... 2

6        Defendants ...................................................................................................... 2

7  JURISDICTION AND VENUE ............................................................................... 3

8  GENERAL ALLEGATIONS ................................................................................... 3

9  PLAINTIFFS' SPECIFIC FACTS ........................................................................... 7

10  INAPPLICABLE OR UNENFORCEABE ARBITRATION CLAUSE .................. 9

11  CLASS ACTION ALLEGATIONS ....................................................................... 10

12  FIRST CLAIM FOR RELIEF ............................................................................... 133

13        Negligence .................................................................................................. 133

14  SECOND CLAIM FOR RELIEF .......................................................................... 134

15        Unjust Enrichment ....................................................................................... 14

16  THIRD CLAIM FOR RELIEF ............................................................................... 15

17        Breach of Contract ...................................................................................... 145

18  FOURTH CLAIM FOR RELIEF .......................................................................... 156

19        Conversion ................................................................................................... 156

20  FIFTH CLAIM FOR RELIEF ............................................................................... 167

21        Violation of the California False Adverstising Act ................................... 167

22  SIXTH CLAIM FOR RELIEF .............................................................................. 179

23        Violation of California Unfair Business Practices Act .............................. 179

24  PRAYER FOR RELIEF ......................................................................................... 22

25  JURY DEMAND .................................................................................................... 23

26

27

28

Class Action Complaint
Case No.:

Plaintiff Jason Lewis, Danielle Hall, and JC Montgomery ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against Green Dot Corporation and Green Dot Bank (collectively, "Green Dot" or "Green Dot Defendants") and MasterCard Incorporated and MasterCard International Incorporated (collectively, "MasterCard" or "MasterCard Defendants")(all four defendants shall collectively be referred to as "Defendants") and for their causes of action respectfully allege as follows:

## INTRODUCTION

1.      This action is brought by Plaintiffs, individually and on behalf of a class of similarly situated holders of a Walmart MoneyCard, a prepaid debit card promoted, issued and serviced through Defendants Green Dot Corporation and Green Dot Bank.  This action arises from a disruption in services for MoneyCard account holders resulting from Green Dot's conversion to a new processing company, MasterCard Payment Transaction Services, a division of MasterCard.  Plaintiffs seek damages and injunctive relief based upon the unlawful conduct of Defendants in denying such account holders the ability to obtain funds in their accounts and in misappropriating funds held in their Walmart MoneyCard accounts.

2.      As a result of Defendants' negligence, and unfair and unlawful conduct, Plaintiffs and Class members have been prevented from accessing their protected assets to purchase items as basic as food, clothing and shelter.  Defendants have converted some

Class Action Complaint
Case No.:

monies for their own use and have unlawfully imposed fees and charges on Plaintiffs and Class members.

3.     Plaintiffs and Class members seek damages, exemplary and punitive damages where appropriate and allowed, and an injunction enjoining the continuation of Defendants' unlawful conduct, restitution and disgorgement.

## THE PARTIES

**A.     Plaintiffs**

1.     Plaintiff Jason Lewis is a citizen and resident of Mississippi.

2.     Plaintiff Danielle Hall is a citizen and resident of Florida.

3.     Plaintiff JC Montgomery is a citizen and resident of Ohio.

**B.     Defendants**

4.     Defendant Green Dot Corporation is a Delaware corporation with its principal place of business in Pasadena, California.

5.     Defendant Green Dot Bank is a federally chartered savings bank with its headquarters in Pasadena, California.

6.     According to the website, https://www.walmartmoneycard.com/, the Walmart MoneyCard is issued by Green Dot Bank and Green Dot Corporation is the member service provider for Green Dot Bank.

7.     Defendant MasterCard Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

8.     Defendant MasterCard International Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

9.     MasterCard International Incorporated is a subsidiary of MasterCard Incorporated.

10.     MasterCard Payment Transaction Services is a division of MasterCard International Incorporated.

Class Action Complaint
Case No.:

11.     Whenever reference in this Complaint is made to any act of Defendants, or other corporate Defendant as may be named in the future, the allegation shall be deemed to mean that the officers, directors, agents, representatives, subsidiaries, affiliates and employees of the Defendant did or authorized the act while actively engaged in the management, direction, or control of the affairs of the corporate Defendant, and while acting within the course and scope of their employment.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendants.

13.     This Court has personal jurisdiction over Defendants Green Dot Corporation and Green Dot Bank because both have their headquarters in Pasadena, California.  This Court has personal jurisdiction over all Defendants because Defendants conduct substantial business in the District and because a substantial part of the acts and omissions complained of occurred in the District.

14.     Venue as to Defendants is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.  The Green Dot Defendants have their principal place of business in this District.  All Defendants are authorized to conduct business in this District, have intentionally availed itself of the laws and markets within this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

15.     The Walmart MoneyCard ("MoneyCard) is a reloadable, prepaid debit card, operated by Defendant Green Dot Bank.  As a prepaid debit card, account holders must add or "load" funds to their account in order to use card.

-3-

Class Action Complaint
Case No.:

16.     MoneyCard may be used online, in stores or anyplace one might use a normal debit card, which makes it more convenient than cash or checks. MoneyCard offers cash back rewards for Walmart purchases.

17.     MoneyCard allows account holders to have their employment wages directly deposited to the card.  In fact, an advertised feature is that that funds directly deposited to the MoneyCard will be available to the account holder the day the transfer from the employer is made, which is two days sooner than if the direct deposit was made to a traditional banking account.[1]

18.     MoneyCard charges account holders fees such as monthly fees, ATM withdrawal fees, transaction fees, and balance inquiry fees.

19.     In or about May 2016, some MoneyCard customers received notice that they would be unable to access their accounts, for funds or information, for a 12-hour period beginning at 7 p.m. ET on Saturday, May 14, 2016.

20.     Defendants have since announced that the disruption in service was needed to allow for a conversion to a new processing company, MasterCard Payment Transaction Services.

21.     Unfortunately, the "temporary" loss of access to accounts lasted longer than the expected 12- hour period.

22.     The system remained down, with cardholders locked out, for many days. While Defendants announced on or about Wednesday, May 18, 2016, that access had been restored and the only service affected during the disruption period was balance inquiries, cardholders have gone to social media complaining of a far difference scenario.

23.     During the time the system was down, MoneyCard account holders did not have access to their funds, causing immense hardship, including the inability to pay for basic necessities such as food, rent, electricity and gas. Additionally, customers were

---

[1] See, https://www.walmartmoneycard.com/ (last visited May 21, 2016).

Class Action Complaint
Case No.:

unable to pay their household bills, resulting in late fees being accessed. Customers took to the internet, and particularly social media, to voice their complaints:[2]

**Mike Wolferstieg** This is frustrating. I have a balance and we have direct deposit from 2 jobs on this card. Car paymentbis now late, my rent is late, had to borrow money for gas and food. Card keeps declining and saying access restricted.

**Ryesha Freeney** This is horrible, I have not been able to use my card for a week. My balance is way off. I have children to feed and bills to pay! I have had this card for five years and all I get is a system update excuse for a week straight!

**Megan Lowery** Electric turned off, phone turned off, insurance cancelled and dentist bill declined, what is going on my entire paycheck is there and i have 0 access to it..

**Wendy Pultz** I have not been able to use my card for 4 days now. Greendot says cards are working but that is a LIE!!!! Every day we call and get another lie. We will be closing this account as soon as we can withdraw the almost $1000.00 on it.
Like · Reply · 👍 5 · May 19 at 1:27pm

**Anthony Hill** I took a snapshot of my balance at 7:37pm may 17th and my balance was 208.45. I went to use my card and could not pay my bill...i have phone records since that day trying to contact them using the number on the back of the card. I was not able to reach... See More
Like · Reply · 👍 3 · May 20 at 8:44am

**Rafael Medicine Man Villaronga** My direct deposit went in on Monday for o we $1200..... I have no access to my money. Can't use card, as you say I can. Quit lying to us and our bill collectors by saying we can use card at ATM and for Purchases it is a ball faced lie and you people know it.......
Like · Reply · 15 hrs

**Jamie Tusler** Your statement "There is no impact to the ability to make purchases or get cash from ATMs..." is false and an outright lie purely out of ignorance for what is happening in your business!

24.     On Sunday, May 22, 2016, Green Dot posted an announcement on its facebook page stating that all issues should be resolved for customers.

---

[2]  See, https://www.facebook.com/GreenDot/ (last visited May 22, 2016).

Class Action Complaint
Case No.:

25.     However, as of the date of this Complaint, many cardholders, including Plaintiffs, still have not regained access. Customers have responded to the posting shown in the preceding paragraph as follows:



26.     As a direct and proximate result of the actions described above, Plaintiffs and members of the proposed classes have been damaged.

27.     This incident is not the first time the MasterCard Defendants have been involved in an extended service disruption related to prepaid debit cards. RushCard is a prepaid debit card similar in function to MoneyCard.  In October 2015, UniRush, LLC entered into an agreement with MasterCard International Incorporated, for MasterCard Payment Transaction Services to become the new processing company for RushCard services. The conversion date was set for October 12, 2015 and RushCard cardholders were informed there would be a 5-hour disruption in service on October 12, 2015 to allow for the conversion to take place. Unfortunately, RushCard cardholders experienced a disruption in service for varying lengths of time through the following weeks until October 31, 2015.

-6-

## PLAINTIFFS' SPECIFIC FACTS

**Plaintiff Jason Lewis**

28.    Plaintiff Jason Lewis has held a MoneyCard for approximately six months. He has his wages directly deposited to his MoneyCard.

29.    On or about 8 p.m. on Sunday, May 15, 2016, Mr. Lewis attempted to withdraw money from her MoneyCard using an ATM.  When the transaction was declined, Mr. Lewis thought there was a problem with the ATM itself.

30.    The following day, Monday, May 16, Mr. Lewis had his card declined when he tried to make a purchase at a Chinese restaurant.  He was told that a message said there were insufficient funds in the account, but Mr. Lewis knew this was an error as he had approximately $800.00 in his account. Mr. Lewis left the restaurant and proceeded to an ATM only to have his card declined again when he tried to make a withdrawal.

31.    As of the date of this Complaint, Mr. Lewis still does not have access to the funds in his MoneyCard account.

32.    Because of his inability to access the funds in his MoneyCard account, Plaintiff Jason Lewis was late on his rent payment.  He was charged a fee of $82.00 for the late rent payment.  Because Mr. Lewis has yet to be able to pay his rent, his landlord has threatened eviction.  Mr. Lewis was also late on his car payment, for which he was assessed a late fee of $18.00.  In order to pay for daily expenses, including food and gas needed to drive to work, Mr. Lewis pawned his television and his watch.  Additionally, Mr. Lewis has had to borrow money from friends.

**Danielle Hall**

33.    Plaintiff Danielle Hall has held a MoneyCard for approximately one year.

34.    On May 16, 2016, Mrs. Hall attempted to transfer funds into her MoneyCard account.  The transfer initially did not appear. When the transfer finally appeared, the transaction history was out of order causing her account to show a negative balance.

-7-

35.    Mrs. Hall made numerous calls to Green Dot and was told repeatedly that this problem was related to a system error caused by the transition to the new processing company.

36.    Mrs. Hall needed the funds to pay her bills and support her four children. She had a car insurance bill that was due; when she called to inform the carrier of her situation she was told a $20 charge for the declined payment would be added to her bill.

37.    As of the date of this Complaint, Mrs. Hall still does not have access to the transferred funds in her MoneyCard account, which still shows a negative balance.

38.    Because of her inability to access the funds in his MoneyCard account, Plaintiff Hall was late on her car insurance payment.  She was charged a fee of $20.00 for the late payment.

**JC Montgomery**

39.    Plaintiff JC Montgomery has held a MoneyCard for approximately five years.  She has her wages directly deposited to her MoneyCard.

40.    On May 20, 2016, Ms. Montgomery received a direct deposit into her MoneyCard account from her employer for her wages.  Her employer's payroll company confirmed the deposit.

41.    Later that day, Ms. Montgomery called Verizon to pay her phone bill for the month of May, but was informed her card was declined. Ms. Montgomery checked her card balance, which listed an incorrect balance of negative $343.00.  Ms. Montgomery's phone bill was due to be paid on May 21, 2016, and was shut off at 12:01 a.m. on May 21, 2016 due to her inability to access her funds and timely pay her bill.

42.    On May 20, 2016, Ms. Montgomery's car bill of $325.00 was due to be paid and because of her inability to access her funds, she was unable to pay her car bill.  As a result, Ms. Montgomery will have to pay a late fee and will receive a negative report on her credit.

Class Action Complaint
Case No.:

43.     Ms. Montgomery sets aside $150 per week from her wages for rent that she pays at the end of every month.  Because of her inability to access her funds, she will be at least $150 short in rent this month.  If she does not regain access to her funds before May 31, 2016, she will be $300 short in rent this month.

44.     Ms. Montgomery has been unable to purchase gas for her car, food for herself, or food for her dogs since May 20, 2016.

45.     Ms. Montgomery's utilities bill is due on May 27, 2016 and unless she is granted access to her funds, she will be unable to pay her it on time.

46.     Ms. Montgomery contacted the Green Dot customer service line, which failed to provide answers for where and when her funds would be available.

47.      As of the date of this Complaint, Ms. Montgomery still does not have access to the transferred funds in her MoneyCard account, which still shows a negative balance.

## INAPPLICABLE OR UNENFORCEABLE ARBITRATION CLAUSE

48.     The MoneyCard Cardholder Agreement purports to require that certain disputes be individually arbitrated.  This provision is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy.

49.     To the extent that Defendants assert that the claims of Plaintiffs and Class members are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

50.     Plaintiffs and Class Members were unfairly and deceptively induced into purchasing MoneyCard cards and depositing money into their MoneyCard accounts because they were lead to believe their funds would be "safe and protected" with unhindered access to these monies.

51.     The terms of MoneyCard's arbitration provision, waiver of class action rights and right to trial by jury are unconscionable and Plaintiffs and Class Members would not have agreed to those terms or deposited any money with MoneyCard had they

known about the fraudulent, unlawful and unfair activity and misrepresentations as described in this Complaint, and to enforce the arbitration provision, including the class ban, would effectively deny Plaintiffs and class members the ability to enforce their respective important legal rights and to obtain just and fair redress for their injuries.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

53.     Plaintiffs seeks to represent the following "Class":

> All consumers in the United States who held a MoneyCard and experienced a disruption in service to their accounts beginning May 14, 2016.

54.     *Numerosity:*  Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are hundreds of thousands of putative Class members throughout the United States who are generally ascertainable by appropriate discovery.

55.     *Commonality*: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    a.  whether Defendants owed duties to Plaintiffs and the putative Class, the scope of those duties and if they breached those duties;

    b.  whether Defendants' conduct was unfair or unlawful;

    c.  whether Defendants' breached their contracts with Plaintiffs and the proposed Class;

d.  whether the arbitration and class action waiver provisions of the MoneyCard cardholder agreement are unconscionable, illusory, fraudulent or otherwise invalid;

e.  whether Plaintiffs and the Class have sustained damages as a result of Defendants' conduct alleged herein and, if so, what is the proper measure of such damages;

f.  whether Plaintiffs and the Class are entitled to restitution and, if so, what is the proper measure of restitution; and,

g.  whether Plaintiffs and the Class are entitled to declaratory and injunctive relief.

56.  *Typicality*: Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

57.  **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

58.  **Superiority:**  The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class

Class Action Complaint
Case No.:

action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

59.     The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

60.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes, and to add subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

61.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

62.      Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class Members prosecuting separate claims is remote, and even if every Class Member could afford individual

Class Action Complaint
Case No.:

litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class Member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

63.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

64.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FIRST CLAIM FOR RELIEF

### Negligence

(On Behalf of the Class as to all Defendants)

65.    Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 64 as though fully set forth herein.

66.    Defendants owed duties to Plaintiffs and the proposed Class as MoneyCard account holders and paying customers to use reasonable care to protect and secure customer funds and provide access to those monies.

67.    Defendants breached their duties to Plaintiffs and the proposed Class by failing to provide customers access to their MoneyCard funds for a prolonged period of time causing hardship to the Plaintiffs and the proposed classes.

-13-

Class Action Complaint
Case No.:

68.     Defendants breached their duties to Plaintiffs and the proposed Class by failing to ensure that transactions would be credited properly and timely to MoneyCard accounts.

69.     Defendants failed to use reasonable care in communicating the information about the MoneyCard system update, conversion to the new processing company and restriction of access to customer funds, as well as the safety and security of account funds.

70.     Based upon past experiences in conversion and the failures that occurred in the RushCard conversion, Defendants should have anticipated potential problems, been adequately prepared to resolve them quickly, and properly advised MoneyCard account holders of the possibility of a prolonged service disruption.

71.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF

Unjust Enrichment

(On Behalf of the Class as to the Green Dot Defendants)

72.     Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 711 as though fully set forth herein.

73.     Plaintiffs and the proposed Class have conferred a benefit upon Green Dot Defendants by purchasing and depositing monies into and paying fees for the use of MoneyCard cards, which did not perform as promised and/or did not have the attributes and benefits promised by Green Dot Defendants.

74.     By their unfair, misleading and unlawful conduct alleged herein, Green Dot Defendants have unjustly received and retained benefits at the expense of Plaintiffs and the proposed Class, including funds that Plaintiffs and the proposed Class paid to Green Dot Defendants and funds deposited to their MoneyCard accounts.

Class Action Complaint
Case No.:

75.     During the time Plaintiffs and the proposed Class have not had access to the funds they deposited to their MoneyCard accounts, the Green Dot Defendants have been accruing interest on the deposited monies and accruing fees assessed to MoneyCard accounts.

76.     Under principles of equity and good conscience, Green Dot Defendants should not be permitted to retain money belonging to Plaintiffs and the proposed Class that they unjustly received as result of its unfair, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and the proposed Class.

77.     Plaintiffs and the proposed Class have suffered financial loss as a direct result of Green Dot Defendants' conduct.

78.     Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Green Dot Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading and unlawful conduct.

## THIRD CLAIM FOR RELIEF

Breach of Contract

(On Behalf of the Class as to Green Dot Defendants)

79.     Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 78 as though fully set forth herein.

80.     Plaintiffs, and each member of the proposed Class, formed a contract with Green Dot Defendants at the time they purchased a MoneyCard.  The terms of that contract include the promises and affirmations of fact made by Green Dot Defendants through their marketing materials and statements, as described above, which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the proposed Class on the one hand, and Green Dot Defendants on the other.

Class Action Complaint
Case No.:

81.     In exchange for Green Dot Defendants' promise of safety and convenience, Plaintiffs and Class members paid monthly fees and other charges for their MoneyCard accounts.

82.     Plaintiffs and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

83.     Green Dot Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the proposed Class by denying customers access to their funds and, thus, not providing a product and service that provided the promised benefits as described above.

84.     The MoneyCard Cardholder Agreement provides that Green Dot Defendants will be liable to cardholders for any losses or damages due to Green Dot Defendants' failure to complete a transaction to or from the card on time or in the correct amount.

85.     As a result of Green Dot Defendants' breach of its contract and warranties, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

Conversion

(On Behalf of the Class as to Green Dot Defendants)

86.     Plaintiffs incorporate by reference all allegations set forth in-paragraph 1 through 85 as though fully set forth herein.

87.     Plaintiffs, and each member of the Class, deposited money into their MoneyCard accounts.

88.     Green Dot Defendants knowingly and intentionally exercised control over the monies belonging to Plaintiffs and Class members, restraining funds, using the funds to their benefit and denying Plaintiffs and Class members access to their funds.

89.     Because of the unlawful restraint imposed by Green Dot Defendants, the rights of Plaintiffs and the Class members in their funds were interfered with and their funds could not be used in the matter in which they desired.

Class Action Complaint
Case No.:

90.     Green Dot Defendants also unlawfully imposed fees upon Plaintiffs and the Class members in connection with these restraints, depriving them of the use and control over their property.

91.     As a result of the foregoing actions of Green Dot Defendants, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

Violation of the California False Advertising Act

(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

(On Behalf of the Class as to Green Dot Defendants)

92.     Plaintiffs incorporate by reference all allegations set forth in-paragraph 1 through 911 as though fully set forth herein.

93.     Pursuant to California Business and Professions Code § 17500 *et seq.*, it is unlawful to engage in in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

94.     The prohibition against false advertising established by California Business and Professions Code § 17500 *et seq.* extends to the use of false or misleading written statements.

95.     Green Dot Defendants misled consumers by making misrepresentations and untrue statements about consumers having regular access to their funds in order to solicit these transactions.

96.     Green Dot Defendants represented that MoneyCard customers would have full access to the funds in their accounts, except for a noticed 12-hour period beginning at

Class Action Complaint
Case No.:

7 p.m. on May 14, 2016. Green Dot Defendants also represented that funds in MoneyCard accounts would be secure and protected.

97.     Despite the disruption in service continuing beyond the noticed 12-hour period and despite customer complaints of losing full access to their accounts, Green Dot Defendants continued to make statements that only a few customers were experiencing extended problems and that the only service affected was balance inquiries.

98.     Green Dot Defendants made an announcement that all services had been restored to all customers as of the evening of Wednesday, May 18, 2016, when in fact, many customers, including Plaintiffs, continue to be locked out of their accounts.

99.     Green Dot Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other Class Members.

100.    As a direct and proximate result of Green Dot Defendants' misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property.  Plaintiffs reasonably relied upon Green Dot Defendants' representations, and were deprived of the funds in their MoneyCard accounts for over a week, and therefore Plaintiffs and other Class Members have suffered injury in fact.

101.    The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class Members in that Green Dot Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Green Dot Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.  Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Green Dot Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Class Members of Green Dot Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

Class Action Complaint
Case No.:

# SIXTH CLAIM FOR RELIEF

Violation of the California Unfair Business Practices Act

(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

(On Behalf of the Class)

102.   Plaintiffs incorporate by reference all allegations set forth in-paragraph 1 through 101 as though fully set forth herein.

103.   Actions for relief under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq* . ("UCL"), may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices which cause or was likely to cause substantial injury. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

104.   California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Green Dot Defendants' acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

105.   In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

Class Action Complaint
Case No.:

106.   Here, Green Dot Defendants' conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class.  Plaintiffs and members of the Class have suffered injury in fact due to Green Dot Defendants' misrepresentation regarding the security of their accounts and their continued access to their own funds.  Thus, Green Dot Defendants' conduct has caused substantial injury to Plaintiffs and the members of the Class.

107.   Moreover, Green Dot Defendants' conduct as alleged herein solely benefits themselves while providing no benefit of any kind to any consumer.  Such deception utilized by Green Dot Defendants convinced Plaintiffs and members of the Class that the they would have constant access to their funds and that their funds would be secure.  In fact, this was not the case for Plaintiffs and other putative class members, Green Dot Defendants unfairly profited.  Thus, the injury suffered by Plaintiffs and the members of the Class is not outweighed by any countervailing benefits to consumers.

108.   Finally, the injury suffered by Plaintiffs and members of the Class is not an injury that these consumers could reasonably have avoided.  Green Dot Defendants failed to take reasonable steps to correct the damages that Plaintiffs and class members were suffering, failed to provide access to their accounts, and failed to even connect them with a helpful customer service representative. As such, Green Dot Defendants took advantage of their position of perceived power in order to deceive Plaintiffs and the Class members to deposit their funds into MoneyCard accounts.  Therefore, the injury suffered by Plaintiffs and members of the Class is not an injury that these consumers could reasonably have avoided.

109.   Thus, Green Dot Defendants' conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

110.   California Business and Professions Code § 17200 *et seq*. prohibits "any unlawful…business act or practice."

111.   Green Dot Defendants used false advertising, marketing, and misrepresentations to induce Plaintiffs and Class Members to deposit monies into their

MoneyCard accounts on the premise that the service disruption would be short-lived, in violation of California Business and Professions Code § 17500 *et seq.*  Green Dot Defendants then falsely misrepresented that the only service disrupted was balance inquiries and that all service had been restored as of Wednesday, May 18, 2016.  Had Green Dot Defendants not falsely advertised, marketed or misrepresented the true nature of the system shut-down and resulting loss of access to funds, Plaintiffs and Class Members would not have continued depositing monies into their accounts, either directly or indirectly through wage deposits. Had Green Dot Defendants not made these representations, Plaintiffs and the Class could have taken appropriate measures to divert funds away from their MoneyCard accounts so that they would have full access to these monies.   Green Dot Defendants' conduct therefore caused and continues to cause economic harm to Plaintiffs and Class Members.

112.   These representations by Green Dot Defendants are therefore an "unlawful" business practice or act under Business and Professions Code § 17200 *et seq.*

113.   Green Dot Defendants, thus, have engaged in unlawful and unfair business acts entitling Plaintiffs and Class Members to judgment and equitable relief against Green Dot Defendants.  Further, pursuant to Business and Professions Code § 17203, Plaintiffs and Class Members seek an order requiring Green Dot Defendants to immediately cease such acts of unlawful and unfair business practices and requiring Green Dot Defendants to correct their actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a result of the foregoing, Plaintiffs Jason Lewis, Danielle Hall, and JC Montgomery, on behalf of themselves and all others similarly situated, pray for relief as follows:

1.      Declaring this action to be a proper class action, certifying the proposed Classes, appointing Plaintiffs as class representatives and appointing Plaintiff' counsel as class counsel;

-21-

2.      An order that Defendants are permanently enjoined from their improper conduct and practices as alleged;

3.      A judgment awarding Plaintiffs and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and fraudulent business practices and conduct;

4.      A judgment awarding Plaintiffs and Class members actual damages;

5.      A judgment awarding Plaintiffs and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful and negligent business practices and conduct;

6.      Pre-judgment and post-judgment interest;

7.      Attorneys' fees, expenses, and the costs of this action; and

8.      All other and further relief as this Court deems necessary, just, and proper.

DATED:  May 22, 2016.          **MCCUNEWRIGHT, LLP**

BY:   */s/ Richard D. McCune*
Richard D. McCune
Attorney for Plaintiff and the Putative
Class

//
//
//
//

## JURY DEMAND

Plaintiff demand a trial by jury on all issues so triable.

DATED:  May 22, 2016.          **MCCUNEWRIGHT, LLP**

Class Action Complaint
Case No.:

1

2  BY:   */s/ Richard D. McCune*

3        Richard D. McCune
         State Bar No. 132124
4        rdm@mccunewright.com
         David C. Wright
5        State Bar No. 177468
         dcw@mccunewright.com
6        2068 Orange Tree Lane, Suite 216
7        Redlands, California  92374
         Telephone:  (909) 557-1250
8        Facsimile:  (909) 557-1275

9

10       MCCUNEWRIGHT LLP
         Joseph G. Sauder*
11       Matthew D. Schelkopf *
12       Joseph B. Kenney*
         1055 Westlakes Drive, Suite 300
13       Berwyn, PA 19312
14       Telephone: (610) 200-0580

15

16       MORGAN & MORGAN
         COMPLEX LITIGATION GROUP
17       John A. Yanchunis*
         Marcio W. Valladares*
18       Patrick A. Barthle II*
19       201 North Franklin Street 7th Floor
20       Tampa, Florida  33602
         (813) 223-5505
21       (813) 223-5402 (fax)

22

23       LAW OFFICE OF JEAN SUTTON
         MARTIN PLLC
24       Jean Sutton Martin*
         2018 Eastwood Road, Suite 225
25       Wilmington, North Carolina 28403
26       (910) 292-6676
         (888) 316-3489 (fax)
27

28       THE MALONE FIRM, LLC

-23-

Thomas B. Malone*
1650 Arch Street, Suite 2501
Philadelphia, PA 19103
Telephone: (267) 670-0189

***Attorneys for Plaintiff and the
Proposed Class and Subclasses***

*\* Pro Hac Vice application to be submitted*

-24-

Class Action Complaint
Case No.: