1  John A. Yanchunis (*pro hac vice*)
2  jyanchunis@forthepeople.com
   Morgan & Morgan Complex Litigation Group
3  201 North Franklin Street 7th Floor
4  Tampa, Florida  33602
   (813) 223-5505 (tel)
5  (813) 223-5402 (fax)
6
7  *Attorneys for Plaintiffs and the Proposed Class*
8
9  ***[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]***
10
11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| 14  JASON LEWIS, DANIELLE HALL, and JUSTIN THORNTON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GREEN DOT CORPORATION; GREEN DOT BANK; MASTERCARD INCORPORATED; and MASTERCARD INTERNATIONAL INCORPORTED, <br><br> Defendants. | Case No.: 2:16-cv-03557-FMO-AGR <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED CONSOLIDATED COMPLAINT FOR:** <br> **(1)  NEGLIGENCE;** <br> **(2)  UNJUST ENRICHMENT;** <br> **(3)  BREACH OF CONTRACT;** <br> **(4)  CONVERSION;** <br> **(5)  VIOLATIONS OF THE FALSE ADVERTISING ACT, CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*;** <br> **(6)  VIOLATIONS OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*; AND** <br> **(7)  BREACH OF BAILMENT CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

THE PARTIES ...................................................................................................... 1

    Plaintiffs ........................................................................................................ 1

    Defendants ..................................................................................................... 2

JURISDICTION AND VENUE ............................................................................ 2

GENERAL ALLEGATIONS ................................................................................ 3

PLAINTIFF-SPECIFIC FACTS ........................................................................... 8

INAPPLICABLE OR UNENFORCEABE ARBITRATION CLAUSE ......................... 11

CLASS ACTION ALLEGATIONS .................................................................... 12

FIRST CLAIM FOR RELIEF ............................................................................ 14

    Negligence .................................................................................................. 14

SECOND CLAIM FOR RELIEF ....................................................................... 16

    Unjust Enrichment ..................................................................................... 16

THIRD CLAIM FOR RELIEF ........................................................................... 17

    Breach of Contract ..................................................................................... 17

FOURTH CLAIM FOR RELIEF ....................................................................... 18

    Conversion .................................................................................................. 18

FIFTH CLAIM FOR RELIEF ............................................................................ 19

    Violation of California False Advertising Law. ........................................ 19

SIXTH CLAIM FOR RELIEF ........................................................................... 21

    Violation of the California Unfair Competition Law ............................... 21

SEVENTH CLAIM FOR RELIEF ..................................................................... 23

    Breach of Bailment Contract ..................................................................... 23

PRAYER FOR RELIEF ..................................................................................... 24

JURY DEMAND ................................................................................................ 25

-i-

Plaintiffs Jason Lewis, Danielle Hall, and Justin Thornton ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against Green Dot Corporation and Green Dot Bank (collectively, "Green Dot" or "Green Dot Defendants"), and MasterCard Incorporated and MasterCard International Incorporated (collectively, "MasterCard" or "MasterCard Defendants") (all four defendants shall collectively be referred to as "Defendants") and for their causes of action respectfully allege as follows:

## **INTRODUCTION**

1.      This action is brought by Plaintiffs, individually and on behalf of a class of similarly situated holders ofGreen Dot Prepaid Card  prepaid debit cards promoted, issued and serviced through Green Dot ("Green Dot Prepaid Cards").  This action arises from a disruption in services for Green Dot Prepaid Card account holders resulting from Green Dot's conversion to a new processing company, MasterCard Payment Transaction Services, a division of MasterCard, on or about May 14, 2016 (the "Service Disruption").

2.      As a result of Defendants' negligence and other violations of law, Plaintiffs and Class members were prevented from accessing their Green Dot Prepaid Card accounts for several days – denying access to the only source of money for many.  During the Service Disruption, Plaintiffs and Class members were unable to spend or withdraw their funds in their respective Green Dot Prepaid Card accounts needed for the basic necessities of life, such as food, clothing and shelter.  During the period in which Plaintiffs and Class members were denied access to their funds, Defendants converted some monies for their own use and unlawfully imposed fees and charges on Plaintiffs and Class members.

3.      Plaintiffs seek damages and injunctive relief based upon the unlawful conduct of Defendants in denying Plaintiffs and Class members the ability to obtain funds in their accounts and in misappropriating funds held in their Green Dot Prepaid Card accounts.

# THE PARTIES

**A.  Plaintiffs**

4.     Plaintiff Jason Lewis is a citizen and resident of Mississippi.

5.     Plaintiff Danielle Hall is a citizen and resident of Florida.

6.     Plaintiff Justin Thornton is a citizen and resident of Georgia.

**B.  Defendants**

7.     Defendant Green Dot Corporation is a Delaware corporation with its principal place of business in Pasadena, California.

8.     Defendant Green Dot Bank is a federally chartered savings bank with its headquarters in Pasadena, California.

9.     Green Dot Prepaid Cards are issued by Green Dot Bank and Green Dot Corporation is the member service provider for Green Dot Bank.

10.     Defendant MasterCard Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

11.     Defendant MasterCard International Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

12.     MasterCard International Incorporated is a subsidiary of MasterCard Incorporated.

13.     MasterCard Payment Transaction Services is a division of MasterCard International Incorporated.

14.     Whenever reference in this Complaint is made to any act of Defendants, or other corporate Defendant as may be named in the future, the allegation shall be deemed to mean that the officers, directors, agents, representatives, subsidiaries, affiliates and employees of the Defendant did or authorized the act while actively engaged in the management, direction, or control of the affairs of the corporate Defendant, and while acting within the course and scope of their employment.

Consolidated Class Action Complaint
Case No.:  2:16-cv-03557-FMO-AGR

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendants.

16.    This Court has personal jurisdiction over the Green Dot Defendants because their headquarters are in Pasadena, California.  This Court has personal jurisdiction over all Defendants because Defendants conduct substantial business in this District and because a substantial part of the acts and omissions complained of occurred in this District.

17.    Venue as to Defendants is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.  The Green Dot Defendants maintain their principal place of business in this District.  All Defendants are authorized to conduct business in this District, have intentionally availed itself of the laws and markets within this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

18.    The Green Dot Prepaid Cards are reloadable, prepaid debit cards issued, serviced, and administered by Green Dot.  Account holders must add or "load" funds to their Green Dot Prepaid Card account in order to use card.

19.    Green Dot Prepaid Cards may be used online, in stores or any place one might use a debit card.  These features make Green Dot Prepaid Cards more convenient for consumers than cash or checks.

20.    Green Dot Prepaid Cards allow account holders to elect to have their employment wages directly deposited to the card.  An advertised feature of Green Dot Prepaid Cards is that such funds directly deposited to the Green Dot account will be available to the account holder the day the transfer from the employer is made, which

may be up to two days earlier than the availability of direct transfers of payroll funds to a traditional banking account.

21. Green Dot charges account holders fees such as monthly fees, ATM withdrawal fees, transaction fees, and balance inquiry fees.

22. Green Dot entered into an agreement with MasterCard International Incorporated ("MCII") pursuant to which MCII was to become the new processing services provider for Green Dot. The migration process was planned to be executed in four separate "waves."

23. The pertinent portion of the conversion (Wave Three) was to occur over a twelve-hour period beginning on May 14, 2016, at 7:00 p.m. EDT.

24. Prior to May 14, 2016, Green Dot Prepaid Card customers whose accounts would be included in Wave Three received notice that they would be unable to access their accounts, for funds or information, during a 12-hour period beginning at 7 p.m. ET on Saturday, May 14, 2016 to allow for the conversion to take place.

25. For the Green Dot Prepaid Card accounts included in Wave Three, 93% of the cards were WalMart MoneyCard-branded prepaid debit cards (issued by Green Dot) and 7% were general Green Dot-branded prepaid debit cards.

26. The "temporary" loss of access to accounts lasted significantly longer than the expected 12-hour period for some Green Dot Prepaid Card customers. Approximately 58,600 customers whose accounts were being converted in Wave Three experienced a longer than anticipated disruption in service for portions of the period of time between May 15, 2016 and May 22, 2016.

27. On or about Wednesday, May 18, 2016, Defendants announced that access had been restored and the only service affected during the disruption period was balance inquiries. Cardholders reported a more injurious set of events, however, on social media websites like Facebook and Twitter.

28. During the Service Disruption, the affected Green Dot Prepaid Card account holders lacked access to their funds, causing hardship, including the inability to

-4-

pay for basic necessities like food, rent, electricity and gas. Additionally, customers were unable to pay their household bills, resulting in late fees being accessed.  Customers voiced complaints on the internet, particularly social media, as shown in the historical statements reproduced on the next page.[1]

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[1]  See, https://www.facebook.com/GreenDot/ (last visited May 22, 2016).

Consolidated Class Action Complaint
Case No.:  2:16-cv-03557-FMO-AGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mike Wolferstieg** This is frustrating. I have a balance and we have direct deposit from 2 jobs on this card. Car paymentbis now late, my rent is late, had to borrow money for gas and food. Card keeps declining and saying access restricted.

**Ryesha Freeney** This is horrible, I have not been able to use my card for a week. My balance is way off. I have children to feed and bills to pay! I have had this card for five years and all I get is a system update excuse for a week straight!

**Megan Lowery** Electric turned off, phone turned off, insurance cancelled and dentist bill declined, what is going on my entire paycheck is there and i have 0 access to it..

**Wendy Pultz** I have not been able to use my card for 4 days now. Greendot says cards are working but that is a LIE!!!! Every day we call and get another lie. We will be closing this account as soon as we can withdraw the almost $1000.00 on it.

Like · Reply · 👍 5 · May 19 at 1:27pm

**Anthony Hill** I took a snapshot of my balance at 7:37pm may 17th and my balance was 208.45. I went to use my card and could not pay my bill...i have phone records since that day trying to contact them using the number on the back of the card. I was not able to reach... See More

Like · Reply · 👍 3 · May 20 at 8:44am

**Rafael Medicine Man Villaronga** My direct deposit went in on Monday for o we $1200..... I have no access to my money. Can't use card, as you say I can. Quit lying to us and our bill collectors by saying we can use card at ATM and for Purchases it is a ball faced lie and you people know it.......

Like · Reply · 15 hrs

**Jamie Tusler** Your statement "There is no impact to the ability to make purchases or get cash from ATMs..." is false and an outright lie purely out of ignorance for what is happening in your business!

Consolidated Class Action Complaint
Case No.:  2:16-cv-03557-FMO-AGR

29.   On Sunday, May 22, 2016, Green Dot posted an announcement on its Facebook page stating that all issues should be resolved for customers.  Yet as of that day, many cardholders, including Plaintiffs, still had not regained access.  Customers on Facebook responded to the May 22, 2016 posting by Green Dot, including as follows:

> **Christina Willson** My card still shows a negating balance. I have duplicated transactions sitting in pending status and no access to any of my funds! I have sent emails, I have replied to the link on my balance page and I will reply to this link but, in the meantime, I ... See More
>
> Like · Reply · 👍 2 · 1 hr · Edited
>
> **Lori Rose Centi** I just want to be able to access my funds. It has been nearly a week now that our card has not worked. This is beyond reprehensible. All of the errors need to be corrected now. We need our money that you are withholding.

> **Tina Tankersley** I just tried to use my card AGAIN and it is still not working!!!!!! I have filled out your little "form" which I am quiet sure was a total waste of time. Ya'll have lied the entire time so I guess this is just another smoke screen because our money is not accessible! My balance is showing fine so what is the problem?????????????????

30.   As a direct and proximate result of the actions described above, Plaintiffs and members of the proposed Class have been damaged.

31.   The above-described incident does not constitute the first time the MasterCard Defendants have been involved in an extended service disruption related to prepaid debit cards.  RushCard is a prepaid debit card similar in function to Green Dot Prepaid Cards.  In October 2015, UniRush, LLC entered into an agreement with MasterCard International Incorporated for MasterCard Payment Transaction Services to become the new processing company for RushCard services.  The conversion date was set for October 12, 2015 and RushCard cardholders were informed there would be a 5-hour disruption in service on October 12, 2015 to allow for the conversion to take place. In fact, RushCard cardholders experienced disruptions in service for varying lengths of time through the following weeks until October 31, 2015.

1

2

## PLAINTIFF-SPECIFIC FACTS

3

**Plaintiff Jason Lewis**

4        32.    Plaintiff Jason Lewis has held a WalMart MoneyCard issued by Green Dot

5    ("MoneyCard") since the beginning of 2016. .  He has his wages directly deposited to

6    his MoneyCard.

7        33.    In the few days prior to May 14, 2016, Mr. Lewis called Green Dot

8    customer service to question suspicious charges on his account.  Mr. Lewis determined

9    during the call that the charges were legitimate, but miscommunication with the

10   customer service representative resulted in Mr. Lewis's account being cancelled.  A new

11   card was to be issued.

12       34.    Not knowing that his account had been closed, Mr. Lewis attempted to

13   withdraw money on or about 8 p.m. on Sunday, May 15, 2016, from his MoneyCard

14   using an ATM.  When the transaction was declined, Mr. Lewis thought there was a

15   problem with the ATM itself.

16       35.    The next day, on Monday, May 16, Mr. Lewis's MoneyCard was declined

17   when he tried to make a purchase at a Chinese restaurant.  He was told that a message

18   said there were insufficient funds in the account, but Mr. Lewis knew this was an error

19   as he had approximately $800.00 in his account.  Mr. Lewis left the restaurant and

20   proceeded to an ATM only to have his card declined again when he tried to make a

21   withdrawal.

22       36.    When he called Green Dot, Mr. Lewis was told that there was no account

23   for him showing in the Green Dot system.  Mr. Lewis later learned that his account was

24   not carried over to the new system during the Wave Three conversion.

25       37.    In the days following the Wave Three conversion, Green Dot discovered

26   that accounts closed shortly before the conversion were not carried over and uploaded to

27   the new processor during the conversion.  Green Dot refers to these accounts as "ghost

28   accounts."

38.     Since his MoneyCard account was not uploaded to the new processing system, his account remained unrecognized and Mr. Lewis did not have access to the funds in his MoneyCard account for at least a week.

39.     Because of his inability to access the funds in his MoneyCard account, Mr. Lewis was late on his rent payment.  He was charged a fee of $82.00 for the late rent payment.  Because of the delay in paying rent, Mr. Lewis's landlord threatened eviction. Mr. Lewis was also late on his car payment, for which he was assessed a late fee of $18.00.  In order to pay for daily expenses, including food and gas needed to drive to work, Mr. Lewis pawned his television and his watch.  Mr. Lewis also had to borrow money from friends.

**Plaintiff Danielle Hall**

40.     Plaintiff Danielle Hall held a Green Dot Prepaid Card for approximately one year prior to May 2016.

41.     On May 16, 2016, Mrs. Hall attempted to transfer funds into her Green Dot Prepaid Card account.  The transfer initially did not appear. When the transfer finally appeared, the transaction history was "out of order," causing her account to show a negative balance.

42.     Mrs. Hall made numerous calls to Green Dot and was told repeatedly that this problem was related to a system error caused by the transition to the new processing company.

43.     Mrs. Hall needed the funds to pay her bills and support her four children. She had a car insurance bill that was due; when she called to inform the carrier of her situation she was told a $20 charge for the declined payment would be added to her bill.

44.     Mrs. Hall lacked access to the transferred funds in her Green Dot Prepaid Card account for approximately a week.

45.     Because of her inability to access the funds in his Green Dot Prepaid Card account, Mrs. Hall was late on her car insurance payment.  She was charged a fee of $20.00 for the late payment.

**Plaintiff Justin Thornton**

46.     Plaintiff Justin Thornton held a MoneyCard account for over five years prior to May 2016.

47.     To avoid the need to travel to a neighboring town, Mr. Thornton used his MoneyCard account to pay his groceries and bills including electricity, phone, auto loan, and auto insurance.  He paid a monthly fee of $3 on his MoneyCard account.

48.     Mr. Thornton did not receive advance notice of the Service Disruption.

49.     Approximately a day or two before the Service Disruption, Mr. Thornton loaded his MoneyCard account with $265.  He then used the funds to pay his electricity bill of approximately $149.

50.     On or around May 16, 2016, Mr. Thornton attempted to use the remaining funds in his MoneyCard account to pay for his auto insurance bill of approximately $109.  The transaction was declined.  He also attempted to withdraw the funds from his MoneyCard account at an ATM but was not able to access his funds.

51.     Mr. Thornton called Green Dot to inquire about his inability to access his funds and was informed by a Green Dot representative that the issue was related to a "system upgrade."  The Green Dot representative advised him to try accessing his funds again in three hours.  Mr. Thornton attempted to access his account every three hours and continued to call Green Dot back when he was still unable to access his account, but Green Dot was not able to help.

52.     As a result of Mr. Thornton's inability to access his funds on his MoneyCard account, he was unable to pay his auto insurance bill and his auto insurance

was terminated.  Without auto insurance, he was not able to drive his truck which he uses to commute to and from his place of work.

53.     Due to Mr. Thornton's inability to access the funds on his MoneyCard account, he had to borrow approximately $300 from his employer to purchase food for himself, his significant other, and his two minor children.

54.     Mr. Thornton did not have access to his funds until around the end of May 2016.  He was nonetheless assessed a monthly fee on his account.  He paid this fee, and has since closed his MoneyCard account.

## INAPPLICABLE OR UNENFORCEABLE ARBITRATION CLAUSE

55.     The Green Dot Prepaid Card Cardholder Agreement purports to require that certain disputes be individually arbitrated.  This provision is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy.

56.     To the extent that Defendants assert that the claims of Plaintiffs and Class members are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

57.     Plaintiffs and Class Members were unfairly and deceptively induced into purchasing Green Dot Prepaid Cards and depositing money into their Green Dot Prepaid Card accounts because they were led to believe their funds would be "safe and protected" with unhindered access to these monies.

58.     The terms of the Green Dot Cardholder Agreement's arbitration provision, waiver of class action rights and right to trial by jury are unconscionable and Plaintiffs and Class Members would not have agreed to those terms or deposited any money with Green Dot  had they known about the fraudulent, unlawful and unfair activity and misrepresentations as described in this Complaint.  To enforce the arbitration provision, including the class ban, would effectively deny Plaintiffs and Class members the ability to enforce their respective important legal rights and to obtain just and fair redress for their injuries.

-11-

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

60.    Plaintiffs seek to represent the following "Class":

> All cardholders, as identified in Green Dot Defendants' business records, who attempted to and were unable to use their Green Dot-issued, MasterCard-processed cards to access or spend their account funds from May 15, 2016 through May 22, 2016 as a result of the Service Disruption.

Excluded from the class are directors and officers of Defendants, the judges to whom this case is assigned and the members of their court staffs.

61.    ***Numerosity:***  Members of the Class are so numerous that joinder of all members is impracticable.  It is estimated that there are 58,600 Class members whose accounts experienced a longer than anticipated disruption in service as part of the Wave Three Conversion.  Green Dot has access to information regarding which of its customers were potentially affected by the Service Disruption, as well as addresses and other contact information for members of the Class, which can be used for providing notice to most Class members.

62.    ***Commonality***:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

   a.  whether Defendants owed duties to Plaintiffs and the putative Class, the scope of those duties and if they breached those duties;

   b.  whether Defendants' conduct was unfair or unlawful;

   c.  whether Defendants breached their contracts with Plaintiffs and the proposed Class;

-12-

d.  whether the arbitration and class action waiver provisions of the Green Dot Prepaid Card cardholder agreement are unconscionable, illusory, fraudulent or otherwise invalid;

e.  whether Plaintiffs and the Class have sustained damages as a result of Defendants' conduct alleged herein and, if so, what is the proper measure of such damages;

f.  whether Plaintiffs and the Class are entitled to restitution and, if so, what is the proper measure of restitution; and

g.  whether Plaintiffs and the Class are entitled to declaratory and injunctive relief.

63.   *Typicality*: Plaintiffs' claims are typical of those of the Class because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

64.   **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the Class. Plaintiffs seek no relief that is adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

65.   *Superiority:*   Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require.  Class

-13-

1  action treatment will permit the adjudication of relatively modest claims by certain Class

2  members who cannot individually afford to litigate a complex claim against large

3  corporate defendants.  Further, even for those Class members who could afford to

4  litigate such a claim, it would still be economically impractical.  If Class members

5  individually litigate their actions, Defendants would gain an unconscionable advantage

6  since they would be able to exploit and overwhelm the limited resources of each

7  individual Class member with superior financial and legal resources, and the costs of

8  individual suits could unreasonably consume the amounts that would be recovered.

9  Plaintiffs know of no difficulty that would arise in the management of this action to

10  preclude its maintenance as a class action.  A class action in this matter will avoid case

11  management difficulties and provide multiple benefits, including efficiency, economy of

12  scale, unitary adjudication with consistent results and equal protection of the rights of

13  each Class Member, all by way of the comprehensive and efficient supervision of the

14  litigation by a single court.

15      66.    Plaintiffs reserve the right to modify or amend the definition of the

16  proposed Class and to modify, amend or remove proposed subclasses, before the Court

17  determines whether certification is appropriate and as the parties engage in discovery.

18                          **FIRST CLAIM FOR RELIEF**

19                                **Negligence**

20               **(On Behalf of the Class as to all Defendants)**

21      67.    Plaintiffs incorporate by reference all allegations set forth in paragraph 1

22  through 66 as though fully set forth herein.

23      68.    Defendants owed a duty to Plaintiffs and the proposed Class, as Green Dot

24  Prepaid Card account holders and paying customers, to use reasonable care to protect

25  and secure their funds and provide them access to those monies.  This duty is mandated

26  by federal law, among other sources.  Under federal law, Defendants are required to,

27  among other things, provide timely access to Plaintiffs' funds as instructed by Plaintiffs.

28  *See* 15 U.S.C. § 1693h(a).

-14-

69.     Defendants breached their duties to Plaintiffs and the proposed Class by failing to provide customers with access to their Green Dot Prepaid Card funds for a prolonged period of time causing hardship to the Plaintiffs and the proposed Class.

70.     Defendants knew, or reasonably should have known, that breaching this duty would harm Plaintiffs and Class members.  It was reasonably foreseeable to Defendants that depriving consumers of access to their Green Dot Prepaid Card accounts for an extended period of time would cause hardship and injury to Plaintiffs and Class members.

71.     Defendants failed to use reasonable care in communicating the information about the Green Dot Prepaid Card system update, converting to the new processing company and restricting access to customer funds and the safety and security of account funds.

72.     Based upon past experiences in similar payment processing conversions and the failures that occurred in the RushCard conversion, Defendants should have anticipated potential problems, been adequately prepared to resolve them quickly, and properly advised Green Dot Prepaid Card account holders of the possibility of a prolonged service disruption.

73.     Defendants' negligence was a substantial factor in causing harm to Plaintiffs and Class members.  But for Defendants' failure to provide Plaintiffs and Class members access to their Green Dot Prepaid Card funds, Plaintiffs and Class members would have been able to pay for basic necessities such as rent and groceries, and make timely payments to satisfy their bills.  As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

-15-

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### (On Behalf of the Class as to the Green Dot Defendants)

74.     Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 66 as though fully set forth herein.

75.     Plaintiffs and the proposed Class have conferred a monetary benefit upon the Green Dot Defendants by purchasing and depositing monies into and paying fees for the use of Green Dot Prepaid Cards, which did not perform as promised and/or did not have the attributes and benefits promised by Green Dot Defendants.

76.     By their unfair, misleading and inequitable conduct alleged herein, the Green Dot Defendants have unjustly received and retained benefits at the expense of Plaintiffs and the proposed Class, including funds that Plaintiffs and the proposed Class paid to Green Dot Defendants and funds deposited to their Green Dot Prepaid Card accounts.

77.     The Green Dot Defendants wrongfully impeded the access of Plaintiffs and Class members to the monies held in trust in their Green Dot Prepaid Card accounts.

78.     During the time Plaintiffs and the proposed Class did not have access to the funds they deposited to their Green Dot Prepaid Card accounts, the Green Dot Defendants accrued interest on the deposited monies and acquired fees assessed to Green Dot Prepaid Card accounts.

79.     Under principles of equity and fairness, the Green Dot Defendants should not be permitted to retain money belonging to Plaintiffs and the proposed Class that they unjustly received as result of their unfair, misleading and inequitable conduct alleged herein without providing compensation to Plaintiffs and the proposed Class.

80.     Plaintiffs and the proposed Class have suffered pecuniary harm as a direct and proximate result of the Green Dot Defendants' inequitable conduct.

81.     Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other

compensation obtained by the Green Dot Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading and inequitable conduct.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

### (On Behalf of the Class as to Green Dot Defendants)

82.     Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 66 as though fully set forth herein.

83.     Plaintiffs, and each member of the proposed Class, formed a contract with the Green Dot Defendants at the time they purchased a Green Dot Prepaid Card.  The terms of that contract include the promises and affirmations of fact made by the Green Dot Defendants through their marketing materials and statements, as described above, which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the proposed Class on the one hand, and the Green Dot Defendants on the other.

84.     In exchange for Green Dot Defendants' promise of convenience and safety of their funds, Plaintiffs and Class members paid monthly fees and other charges for their Green Dot Prepaid Card accounts.

85.     Plaintiffs and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

86.     The Green Dot Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the proposed Class by denying customers access to their funds and, thus, not providing a product and service that provided the promised benefits described above.

87.     The Green Dot Prepaid Card Cardholder Agreement provides that the Green Dot Defendants will be liable to cardholders for any losses or damages due to the Green Dot Defendants' failure to complete a transaction to or from the card on time or in the correct amount.

88.     As a direct and proximate result of the Green Dot Defendants' breach of their contract and warranties, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Conversion

### (On Behalf of the Class as to Green Dot Defendants)

89.     Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 66 as though fully set forth herein.

90.     Plaintiffs, and each member of the Class, deposited money into and/or held funds in their Green Dot Prepaid Card accounts.  At all relevant times, Plaintiffs and Class members owned, possessed, and had a right to control the funds in their Green Dot Prepaid Card accounts.

91.     The Green Dot Defendants knowingly and intentionally exercised control over the monies belonging to Plaintiffs and Class members, restraining funds, using the funds to their benefit and preventing Plaintiffs and Class members from access to their funds.  This restraint on the funds belonging to Plaintiffs and Class members was unlawful and unreasonable.

92.     Because of the unlawful restraint imposed by the Green Dot Defendants, the rights of Plaintiffs and the Class members in their funds were interfered with and their funds could not be used in the matter in which they desired.

93.     The Green Dot Defendants also unlawfully continued to deduct monies from the Green Dot Prepaid Card accounts to pay for fees imposed upon Plaintiffs and the Class members during the time they were denied access to their funds, further depriving them of the use and control over their personal property.

94.     The Green Dot Defendants, without proper authorization or justification, assumed and exercised the right of ownership of these funds, in hostility to the rights of Plaintiffs and Class members.

95.    The Green Dot Defendants' wrongful exercise of control over the personal property of Plaintiffs and Class members constitutes conversion.

96.    Plaintiffs and Class members neither assented to nor ratified the Green Dot Defendants' interference with the funds in their Green Dot Prepaid Card accounts.

97.    As a result of the foregoing actions of the Green Dot Defendants, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Violations of the California False Advertising Law

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

### (On Behalf of the Class as to Green Dot Defendants)

98.    Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 66 as though fully set forth herein.

99.    Pursuant to the False Advertising Law, California Business and Professions Code § 17500, *et seq.*, it is unlawful to engage in in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . or . . . to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

100.    The False Advertising Law prohibits misleading advertising through the use of false or misleading written statements.

101.    The Green Dot Defendants misled consumers by making misrepresentations and untrue statements that consumers would enjoy regular access to the funds loaded on their Green Dot Prepaid Cards.  These representations were intended to, and did, induce consumers to use and rely on funds in Green Dot Prepaid Cards.

102.    The Green Dot Defendants represented that customers whose accounts were involved in the Wave Three Conversion would have full access to the funds in their accounts, except for a noticed 12-hour period beginning at 7 p.m. on May 14, 2016.  The

-19-

Green Dot Defendants further represented that funds in Green Dot Prepaid Card accounts would be secure and protected.

103.   Despite the disruption in service continuing beyond the noticed 12-hour period and despite customer complaints of losing full access to their accounts, the Green Dot Defendants continued to make statements that only a few customers were experiencing extended problems and that the only service affected was balance inquiries.

104.   The Green Dot Defendants announced that all services had been restored to all customers as of the evening of Wednesday, May 18, 2016, when in fact, many customers, including Plaintiffs, continued to be locked out of their accounts.

105.   On Sunday, May 22, 2016, the Green Dot Defendants announced that all issues had been resolved for customers when, in fact, many customers still were without access to the funds in their accounts.

106.   The Green Dot Defendants knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other Class Members.

107.   As a direct and proximate result of the Green Dot Defendants' false and misleading advertising, Plaintiffs and Class Members have suffered damages and have lost money or property.  Plaintiffs reasonably relied upon the Green Dot Defendants' misrepresentations and were deprived of the funds in their Green Dot Prepaid Card accounts for a longer than anticipated time.

108.   Plaintiffs are entitled to preliminary and permanent injunctive relief requiring the Green Dot Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Class Members of revenues obtained by the Green Dot Defendants by means of their false and misleading advertising.

Consolidated Class Action Complaint
Case No.:  2:16-cv-03557-FMO-AGR

## SIXTH CLAIM FOR RELIEF

### Violations of the California Unfair Competition Law ("UCL")

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

### (On Behalf of the Class as to Green Dot Defendants)

109.   Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 66 as though fully set forth herein.

110.   The Green Dot Defendants' acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices in violation of the UCL.  The Green Dot Defendants' conduct detailed above is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous.  The gravity of this conduct outweighs any benefits that could be attributed to it, and this conduct caused consumers unavoidable harm.  There were reasonably available alternatives to further the Green Dot Defendants' legitimate business interests, other than the conduct detailed above.

111.   The Green Dot Defendants' conduct caused substantial injury to Plaintiffs and Class members.  Plaintiffs and Class members suffered damages as a result of the Green Dot Defendants' misrepresentations regarding the security of their accounts and their continuing access to their account funds

112.   The Green Dot Defendants' conduct as alleged herein solely benefits themselves while providing no benefit to any consumer.  Based on the representations of the Green Dot Defendants, Plaintiffs and Class members reasonably believed they would have regular access to their funds.  The Service Disruption, however, denied Plaintiffs and Class members access to the funds in their Green Dot Prepaid Cards for a period of several days.

113.   Before, during and after the Service Disruption, the Green Dot Defendants failed to give adequate and accurate notice to Plaintiffs and Class members of the problems experienced during the systems conversion which prevented access to funds. The Green Dot Defendants failed to take reasonable steps to correct the damages that

Plaintiffs and Class members were suffering, failed to afford access to their accounts, and failed to connect them with customer service representatives. Plaintiffs and Class members thus had no reasonable means of avoiding injury.

114.   Further, the Green Dot Defendants violated the UCL's prohibition of unlawful business practices. The Green Dot Defendants material misrepresentations and omissions induced Plaintiffs and Class Members to deposit funds into their Green Dot Prepaid Card accounts on the false premise that the Service Disruption would be short-lived. Additionally, the Green Dot Defendants falsely represented that the only service disrupted was balance inquiries, and at least twice misrepresented to consumers that all services had been restored when they had not been restored. Had the Green Dot Defendants not misrepresented the true nature of the conversion problems and the resulting loss of access to funds, Plaintiffs and Class Members would not have continued depositing funds into their accounts, either directly or indirectly through wage deposits. Had the Green Dot Defendants not made these false representations, Plaintiffs and Class members could have taken appropriate measures to divert funds away from their Green Dot Prepaid Card accounts so that they would have access to these monies. Thus, the Green Dot Defendants' false advertising caused economic harm to Plaintiffs and Class Members.

115.   The Green Dot Defendants' conduct stated herein is also unlawful in violation of the UCL because it violates the EFTA, as set forth above.

116.   The aforementioned UCL violations entitle Plaintiffs and Class Members to appropriate equitable relief, including restitution, against the Green Dot Defendants. Pursuant to Business and Professions Code section 17203, Plaintiffs and Class Members seek an appropriate injunction against the Green Dot Defendants.

-22-

## SEVENTH CLAIM FOR RELIEF

### Breach of Bailment Contract

### (On Behalf of the Class as to Green Dot Defendants)

117.   Plaintiffs incorporate by reference all allegations set forth in paragraph 1 through 66 as though fully set forth herein.

118.   When they opened Green Dot Prepaid Card accounts, Plaintiffs and Class members entered into a contract for bailment with the Green Dot Defendants.

119.   By Plaintiffs and Class members' transferring or depositing funds into their Green Dot Prepaid Card accounts, personal property was delivered to the Green Dot Defendants, with Green Dot's consent, to keep for the benefit of Plaintiffs and Class members.

120.   These funds constituting personal property of Plaintiffs and Class members were delivered to the Green Dot Defendants for the specific purpose of holding these funds in trust for, and permitting access to and use of these funds by, Plaintiffs and Class members.

121.   The terms of the bailment contract between Plaintiffs and Class members and the Green Dot Defendants included an understanding that the funds would be expended in transactions or returned to Plaintiffs and Class members as directed.

122.   In exchange for Green Dot's promise that they would have access to and use of the funds in their Green Dot Prepaid Card accounts, Plaintiffs and Class members paid fees and other charges to the Green Dot Defendants.

123.   The Green Dot Defendants accepted delivery of funds constituting the personal property of Plaintiffs and Class members.

124.   The Green Dot Defendants did not faithfully execute the purpose of the bailment contract with Plaintiffs and Class members.  The Green Dot Defendants breached the contract by preventing  approximately 58,600 Green Dot Prepaid Card account holders from accessing their funds for an extended period of time.

125.   The Green Dot Defendants' failure to redeliver the funds of Plaintiffs and Class members at their direction, as promised, was the fault of the negligence of the Green Dot Defendants.

126.   The Green Dot Defendants' breach of bailment contract directly and proximately caused Plaintiffs and Class members to incur damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the foregoing, Plaintiffs Jason Lewis, Danielle Hall, and Justin Thornton, on behalf of themselves and all others similarly situated, pray for relief as follows:

1.   For an order certifying the proposed Class, appointing Plaintiffs as class representatives and appointing Plaintiffs' counsel as class counsel;

2.   An order that Defendants are permanently enjoined from their improper conduct and practices as alleged;

3.   A judgment awarding Plaintiffs and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and fraudulent business practices and conduct;

4.   A judgment awarding Plaintiffs and Class and Subclass members actual damages;

5.   Pre-judgment and post-judgment interest;

6.   Attorneys' fees, expenses, and the costs of this action; and

7.   All other and further relief as this Court deems necessary, just, and proper.

DATED:  February 10, 2017.

MORGAN & MORGAN
COMPLEX LITIGATION GROUP

BY:   */s/ John A. Yanchunis*
      John A. Yanchunis (*pro hac vice*)

201 North Franklin Street 7th Floor
Tampa, Florida  33602
(813) 223-5505
(813) 223-5402 (fax)

## JURY DEMAND

Plaintiff demand a trial by jury on all issues so triable.

DATED:  February 10, 2017.

MORGAN & MORGAN
COMPLEX LITIGATION GROUP

BY:   */s/ John A. Yanchunis*
      John A. Yanchunis (*pro hac vice*)
      201 North Franklin Street 7th Floor
      Tampa, Florida  33602
      (813) 223-5505
      (813) 223-5402 (fax)

MCCUNE•WRIGHT•AREVALO, LLP
      Richard D. McCune
      State Bar No. 132124
      rdm@mccunewright.com
      3281 East Guasti Road, Suite 100
      Ontario, California  91761
      Telephone:  (909) 557-1250
      Facsimile:  (909) 557-1275

MCCUNE•WRIGHT•AREVALO, LLP
      Joseph G. Sauder (*pro hac vice*)
      Matthew D. Schelkopf (*pro hac vice*)
      Joseph B. Kenney (*pro hac vice*)
      555 Lancaster Ave
      Berwyn, PA 19312
      Telephone: (610) 200-0580

-25-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICE OF JEAN SUTTON MARTIN PLLC**

    Jean Sutton Martin (*pro hac vice*)
    2018 Eastwood Road, Suite 225
    Wilmington, North Carolina 28403
    Telephone: (910) 292-6676

**GIRARD GIBBS LLP**

    Daniel C. Girard
    State Bar No. 114826
    Jordan Elias
    State Bar No. 228731
    Linh G. Vuong
    State Bar No. 286837
    601 California Street, 14th Floor
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Facsimile: (415) 981-4846

    *Attorneys for Plaintiff and the Proposed Class*

Consolidated Class Action Complaint
Case No.:  2:16-cv-03557-FMO-AGR