John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Morgan & Morgan Complex Litigation Group
201 North Franklin Street 7th Floor
Tampa, Florida  33602
(813) 223-5505 (tel)
(813) 223-5402 (fax)

*Attorneys for Plaintiffs and the Proposed Class*

[List of Counsel Continued on Signature Page]

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LEWIS, DANIELLE HALL, JUSTIN THORNTON, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GREEN DOT CORPORATION; GREEN DOT BANK; MASTERCARD INCORPORATED; and MASTERCARD INTERNATIONAL INCORPORATED,<br><br>        Defendants. | Case No.: 2:16-cv-03557-FMO-AGR<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF AMENDED MOTION AND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Fernando M. Olguin |

## NOTICE OF MOTION

PLEASE TAKE NOTICE Plaintiffs Jason Lewis, Danielle Hall, and Justin Thornton will and hereby do respectfully move the Court for preliminary approval of the Settlement; certification of the proposed settlement class under Rule 23(b)(3); appointment of Plaintiffs as class representatives; appointment of lead counsel (John A. Yanchunis of Morgan & Morgan Complex Litigation Group) and class counsel (Richard D. McCune and Joseph G. Sauder of McCune Wright Arevalo LLP, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, and Daniel C. Girard and Linh G. Vuong of Girard Gibbs LLP) to serve as counsel for the certified class under Rule 23(g); an order for dissemination of class notice pursuant to the notice plan set forth in the Amended Settlement Agreement; and a schedule for final settlement approval.

Plaintiffs' amended motion is based on this notice; the accompanying Memorandum of Points and Authorities and all attachments thereto (including the Amended Settlement Agreement); Proposed Order Granting Preliminary Approval of Class Settlement; and all records, pleadings and papers filed in this action.  This Motion is unopposed by Defendants.

DATED: February 13, 2017   Respectfully submitted,

         By: /s/ John A. Yanchunis
         **MORGAN & MORGAN**
         **COMPLEX LITIGATION GROUP**
         John A. Yanchunis
         201 North Franklin Street 7th Floor
         Tampa, Florida 33602
         (813) 223-5505
         (813) 223-5402 (fax)

         *Proposed Lead Counsel*

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................ i

TABLE OF AUTHORITIES ...................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................... 1

I.     INTRODUCTION ............................................................................ 1

II.    BACKGROUND .............................................................................. 1

III.   OVERVIEW OF THE LITIGATION AND PROPOSED SETTLEMENT ......... 5

       A.    The Litigation ..................................................................... 5

       B.    Settlement Negotiations ..................................................... 6

       C.    Overview of the Proposed Settlement ............................... 7

             1.    The Proposed Settlement Class ................................ 7

             2.    Settlement Relief ..................................................... 7

             3.    Notice to the Class ................................................. 10

             4.    Opt-Out and Objection Procedures ........................ 12

             5.    Administrative Costs .............................................. 12

             6.    Attorney Fees, Costs, and Service Awards ............ 12

             7.    Release ................................................................... 13

IV.    ARGUMENT .................................................................................. 14

       A.    The Settlement Merits Preliminary Approval .................. 14

             1.    The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations Between Experienced Counsel ................. 15

             2.    The Settlement has no Obvious Deficiencies and Falls Within the Range of Possible Approval ........................................... 16

3.      The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class. ........................ 21

C.   The Court Should Certify the Settlement Class ........................................ 23

1.      The Settlement Class Meets The Requirements of Rule 23(a). ...... 23

2.      The Settlement Class Meets The Requirements Of Rule 23(b)(3). 24

3.      The Court Should Appoint Class Counsel. ..................................... 25

D.   The Court Should Order Dissemination of Class Notice As Proposed By the Parties ............................................................................................... 26

1.      The Settlement Provides the Best Method of Notice Practicable Under the Circumstances. ............................................................... 26

2.      The Proposed Form of Notice Adequately Informs Settlement Class Members of Their Rights in Connection with the Settlement. ....... 27

3.      Notice of the Settlement Will Be Provided to Appropriate Federal and State Officials. .......................................................................... 28

E.   The Selected Cy Pres Recipient Is Appropriate ....................................... 29

F.   The Court Should Set a Schedule for Final Approval .............................. 30

III.   CONCLUSION ..................................................................................................... 31

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

# TABLE OF AUTHORITIES

**Cases**

*Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372
    (N.D. Cal. July 24, 2015)...........................................................................21

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)...................................23, 25

*Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004) ............15

*Fuentes v. UniRush, LLC,*  Final Approval Order, No. 1:15-cv-08372
    (S.D.N.Y. Sept. 12, 2016)...................................................................15, 19

*G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078
    (N.D. Cal. July 30, 2015)...........................................................................21

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)........................24

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ...............23, 24, 25

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973
    (N.D. Cal. 2011) .........................................................................................14

*Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423
    (N.D. Cal. Sept. 29, 2016).........................................................................16

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL
    10212865 (C.D. Cal. July 28, 2014)..........................................................16

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............15

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)..............22, 27

*In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............14, 16

*In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL
    428105 (N.D. Cal. May 29, 2012)..............................................................30

*Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541
    (N.D. Cal. Sept. 10, 2012) ........................................................................18

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Circ. 2012) ...................................27

*Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, *et al.*, 1997 WL 450064
    (N.D. Cal. July 18, 1997)......................................................................16

*Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-DV-02125
    (N.D. Cal. July 5, 2012)........................................................................30

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011)..............................29

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)....14

*Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563 (C.D. Cal. 2012) .........................23

*Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. Of S.F.*, 688 F.2d 615
    (9th Cir. 1982) .....................................................................................17

*Radcliffe v. Experian Info. Solutions, Inc.,* 715 F.3d 1157 (9th Cir. 2013)............22, 23

*Rannis v. Recchia*, 380 F. App'x. 646 (9th Cir. 2010) ................................27

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ..........29

*Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395
    (N.D. Cal. Jan. 29, 2016) .....................................................................22

*Spann v. J.C. Penney Corp.* ("*Spann I*"), 314 F.R.D. 312 (C.D. Cal. 2016).........passim

*Staton v. Boeing, Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................22

*Stern v. Superior Court*, 129 Cal. Rptr. 2d 275 (Cal. Ct. App. 2003) .........................18

*Vandervort v. Balboa Capital Corp.*, No. SACV 11-1578-JLS (JPRx)
    (C.D. Cal. Mar. 27, 2014).....................................................................20

*Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-cv-01303-KJM-EFB
    (E.D. Cal. Dec. 17, 2014).....................................................................20

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ..........23, 24

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .............................................29

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

**Rules**

Fed. R. Civ. P. 23(a)..................................................................................23

Fed. R. Civ. P. 23(c)(2)(B) .................................................................26, 27

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................25

**Treatises**

*Manual for Complex Litigation (Fourth)* §21.632 at 320 (2004)...........................14, 23

Newberg on Class Actions § 13:10 (5th ed.) .............................................14

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On January 12, 2017, a hearing was held on Plaintiffs' unopposed motion for preliminary approval of class action settlement with counsel for both Plaintiffs and Defendants present.  At the hearing, the Court facilitated an in-depth discussion, providing the parties with the Court's view of the initially proposed settlement while also allowing counsel to present argument as to why the parties believed the initially proposed settlement was fair, reasonable and adequate.  In doing so, the Court advised the parties of its concerns with the proposed settlement and directed the parties to address them in a supplemental submission.  With the Court's suggestions and guidance in mind, the parties began additional negotiations to make modifications to the settlement which would address the Court's previously stated concerns.  After extensive discussions, the parties were able to reach a settlement addressing the Court's concerns.  Most significantly, Defendants have now agreed to a minimum contribution of $1.5 million for the Tier 2 and 3 Settlement Fund, with any excess being paid to a designated *cy pres* entity.  Should the total value of validly filed claims exceed the Minimum Payment of $1.5 million, Defendants shall pay the total value of validly filed claims up to the Tier 2 and Tier 3 Maximums as described below and in the Settlement Agreement.   Plaintiffs hereby renew their motion for preliminary approval of the Settlement Agreement and Amended Settlement Agreement (collectively, "Settlement" or "Settlement Agreement"). [1]

## II.   BACKGROUND

On May 14, 2016, at 7:00 p.m. EDT, the Green Dot Defendants ("Green Dot") launched the third wave of conversion of its processing services for its Prepaid Cards to its new provider, a unit of MasterCard International Incorporated ("MasterCard").  Of the Prepaid Cards being converted during the Wave Three Conversion, 93% were

---

[1] Capitalized terms used herein are defined in the Amended Settlement Agreement ("SA"), attached hereto as **Exhibit 1**.

WalMart MoneyCards issued by Green Dot and 7% were general Green Dot prepaid MasterCards and Visa cards.  Once the Green Dot system went live after the conversion, some Cardholders, approximately 58,600, noted various issues, including 1) active cards reflected as inactive; 2) incorrect card balances causing declined transactions; 3) authorization holds incorrectly applied twice, causing declined transactions; 4) duplicate charging of monthly maintenance fees; and, 5) delays in activating new cards.  Some of these issues occurred sporadically until May 22, 2016 causing these approximately 58,600 Cardholders difficulty accessing their funds, which, in some cases, affected their ability to pay rent, pay electricity bills, purchase food and water, and withdraw cash, among other things.  As a result, members of the Class incurred economic harm in the form of, *inter alia*, missed bill payments, the assessment of late fees, termination of utility services and the inability to pay for daily living expenses.

Since the Service Disruption, Class Counsel have worked vigorously to remedy the harms imposed on the Settlement Class, which led to preliminary relief in the form of a $50 account credit ("Courtesy Credit") and a waiver of monthly fees ("Fee Holiday") for two months for most Settlement Class Members who had an active Green Dot account in May and June 2016.  Through the Fee Holiday and Courtesy Credit, Green Dot has provided more than $3.3 million to Settlement Class Members already, and approximately an additional $1.1 million in individualized courtesy credits.  After intensive and informed arm's-length negotiations, the parties reached a settlement to provide additional benefits that are tailored to the losses suffered by Settlement Class Members as a result of the Service Disruption, address the issues raised in the litigation and provide significant and prompt relief to the proposed Settlement Class Members.

Although Defendants do not admit liability, the Settlement provides three tiers of relief to compensate Settlement Class Members for inconveniences and losses as a result of the Service Disruption.  Tier 1 relief entitles all Settlement Class Members

to reimbursement of their monthly maintenance fee for one month. At the time of the Wave Three Conversion, the monthly maintenance fee for the affected PrePaid Cards fell within a range of $3.00–$7.95 depending on the type of card at issue.  Benefits under this tier are automatic and Settlement Class Members will not be required to submit a Claim Form to receive them.  Defendants estimate Tier 1 benefits will provide approximately $250,000 to Settlement Class Members.

In addition to receiving automatic benefits under Tier 1, Settlement Class Members may also participate in either Tier 2 or Tier 3 for payment of losses incurred as a result of any inability to access or spend account funds from May 15, 2016 through May 22, 2016 as a result of the Service Disruption.  The bifurcation of these tiers allows for Settlement Class Members to make a claim for losses with the option to submit documentation to support their losses for greater reimbursement. Under the terms of the Settlement, Defendants will pay a guaranteed minimum of $1.5 million and a maximum of $3.5 million under the provisions related to Tiers 2 and 3 of the Settlement. If an insufficient number of valid and timely claims are submitted and paid to exhaust the minimum amount of $1.5 million, then the Defendants shall pay the difference of the Minimum Payment ($1.5 million minus the total value of valid claims filed across Tier 2 and Tier 3), as explained below and subject to the Court's approval, to a *cy pres* recipient approved by the Court.  Subject to the Court's approval, the parties have selected Consumer Action, a non-profit organization that has been committed to advancing the rights of consumers nationwide in a variety of areas, including financial advocacy and education, for more than 40 years.

To make a claim, Settlement Class Members must simply submit a Claim Form online on the Settlement website or submit a Claim Form by mail.  Settlement Class Members may each submit one claim electing either Tier 2 or Tier 3 benefits.   Under Tier 2, Settlement Class Members who suffered a qualifying loss (as defined in the Settlement Agreement) who do not submit documents to support their losses will be

eligible for a payment of up to $100, with an aggregate amount not to exceed $2 million.  In the event that the amounts to be paid to Settlement Class Members under Tier 2 exceed the $2 million maximum payment, which would require an uncharacteristically high claims rate, then the amount paid to each Settlement Cass Member will be reduced pro rata.  Under Tier 3, Settlement Class Members who submit proof of a qualifying loss will be eligible for a payment of up to $750, with an aggregate amount not to exceed $1.5 million, plus any residue from Tier 2.   In the event that the amounts to be paid to Settlement Class Members under Tier 3 exceed the $1.5 million maximum payment plus any residue from Tier 2, which again would require an uncharacteristically high claims rate, then the amount paid to each Settlement Cass Member will be reduced pro rata.

Defendants will bear the costs of class notice and other costs associated with administering the Settlement, estimated to be approximately $145,000.  Subject to Court approval, Defendants will also pay Class Counsel's attorneys' fees, costs and expenses, not to exceed $750,000 in the aggregate, and Service Awards not to exceed $500 per Settlement Class Representative.  These fees, costs and expenses and the Service awards will be paid separate and apart from the relief provided to Settlement Class Members; that is, the fees, cost and expenses and Service awards will not reduce the benefits and payments to the Settlement Class Members

After investigating the facts and carefully considering applicable law, the Named Plaintiffs and Class Counsel have concluded that it would be in the best interests of the Settlement Class Members to enter into this Settlement in order to avoid the uncertainties of litigation and to assure meaningful and timely benefits to the Settlement Class Members.  For the reasons stated in this Memorandum and accompanying documents, the Named Plaintiffs and Class Counsel respectfully submit that the terms and conditions of this Settlement are fair, reasonable, and adequate and in the best interests of all Members of the Settlement Class. Accordingly, the Named Plaintiffs respectfully request that the Court enter an Order

(1) preliminarily approving the proposed Settlement; (2) certifying the proposed Settlement Class under Rule 23(b)(3); (3) appointing lead counsel (John A. Yanchunis of Morgan & Morgan Complex Litigation Group) and class counsel (Richard D. McCune and Joseph G. Sauder of McCune Wright Arevalo LLP, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, and Daniel C. Girard and Linh G. Vuong of Girard Gibbs LLP) to serve as counsel for the certified class under Rule 23(g); (4) approving and ordering dissemination of the proposed class notice and forms pursuant to the Notice Plan set forth in the Settlement Agreement; and (5) scheduling a Final Approval Hearing.

## III.   OVERVIEW OF THE LITIGATION AND PROPOSED SETTLEMENT

### A.   The Litigation

This consolidated litigation is a result of two putative class actions—*Lewis, et al. v. Green Dot Corporation,* No. 2:16-cv-03557 (C.D. Cal.), and *Crook v. Green Dot Corporation*, No. 2:16-cv-04172 (C.D. Cal.).  Plaintiffs Jason Lewis, Danielle Hall, and JC Montgomery filed the *Lewis* complaint on May 22, 2016 and alleged that Defendants' conduct constituted negligence, unjust enrichment, breach of contract, conversion, and violations of California consumer protection statutes. (*See Lewis* Action, ECF No. 1.)  Plaintiff Kathleen Crook filed her suit on June 10, 2016 and asserted materially similar claims as the *Lewis* Action. (*See* Crook Action, ECF No. 1).  On July 14, 2016, the Court consolidated the *Lewis* and *Crook* Actions. (*See* Lewis Action, ECF No. 63).

After the Court consolidated the actions, Class Counsel coordinated their resources and expertise to effectively and efficiently prosecute this case.  Class Counsel continued to communicate with other affected Cardholders to further investigate the Service Disruption and its effects, researched and evaluated potential claims, and strategized on types of relief suitable for the Class.

On September 9, 2016, Plaintiffs Jason Lewis, Danielle Hall, and Justin Thornton[2] filed a consolidated complaint on behalf of all Cardholders affected by the Service Disruption. Named Plaintiffs alleged that Defendants' failure to make their money available to them violated the California False Advertising Act, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and constituted negligence, unjust enrichment, breach of contract, conversion, and breach of bailment contract.  (*See* Lewis Action, ECF No. 70).

**B.   Settlement Negotiations**

On July 15, 2016, counsel for the Parties participated in a full-day meeting in Los Angeles to exchange information on the parties' respective positions as to the facts and the law underlying the litigation, including the cause of the Service Disruption, the consequences of the Service Disruption on Cardholders, the size of the proposed Class, and the strengths and weaknesses of the allegations in support of, and defenses to, the litigation, including the applicability of the arbitration clause contained in the Cardholder Agreement. (SA § I.H.)  Counsel for the Parties also discussed a possible framework for resolving the matter in light of the information relevant to the allegations of the litigation. (SA § I.I.)

Over the following eleven weeks, counsel for the Parties continued settlement discussions via multiple telephone conferences, and exchanged proposals and counter-proposals regarding Class relief. (*Id.*) On October 6, 2016, the Parties reached an agreement in principle with regard to the material terms of the proposed settlement, as memorialized in the original Settlement Agreement. (*Id.*) The Parties did not discuss attorneys' fees, costs, and expenses prior to reaching a final agreement on relief for the Settlement Class, service awards for Class

---

[2] The information exchanged between counsel for the Parties confirmed that JC Montgomery and Kathleen Crook were not affected by the Service Disruption as they believed and they elected not to proceed as class representatives.

Representatives, and the remaining material terms of the proposed settlement. (SA §
I.M).) On October 7, 2016, the Parties executed a settlement term sheet which
memorialized all the essential terms of the Parties' settlement. (SA § I.N.)  The
Parties worked diligently together in preparing the settlement papers and a
comprehensive notice program.

After hearing the Court's concerns raised during the preliminary approval
hearing on January 12, 2007, counsel for the Parties renewed settlement negotiations
via telephone conferences, and exchanged multiple proposals and counter-proposals
regarding amendments to the Settlement.  On February 13, 2017, the Parties executed
an amended settlement agreement.

**C.**   **Overview of the Proposed Settlement**

**1.**   **The Proposed Settlement Class**

The Settlement contemplates relief for the following proposed Settlement
Class:

> All cardholders, as identified in Green Dot Defendants' business
> records, who attempted to and were unable to use their Green Dot-
> issued, MasterCard-processed cards to access or spend their account
> funds from May 15, 2016 through May 22, 2016 as a result of the
> Service Disruption.

(SA, § III.1.)  Excluded from the Settlement Class are the Court, the officers and
directors of Defendants, persons who have been separately represented by an attorney
and entered into a separate settlement agreement, and persons who timely and validly
request exclusion from the Settlement Class. (*Id.* at § III.2)

**2.**   **Settlement Relief**

The valuable benefits made available pursuant to the Settlement squarely
address the issues raised in the litigation and provide significant relief to the
Settlement Class Members.

**Initial Fee Holiday and $50 Account Credit**:  Without requiring Court approval, Defendants provided two benefits to compensate some Settlement Class Members for inconveniences and losses as a result of the Service Disruption.   Most Settlement Class Members with an active Green Dot account received a two-month Fee Holiday. (SA § IV.1(a).)  During this period, these Settlement Class Members were not assessed any monthly maintenance fees on their Green Dot accounts. (*Id.*) As explained in the accompanying declaration of Teresa Watkins, most Settlement Class Members with an active Green Dot account also received a $50 credit to their account. (SA § IV.1(b).)

**Additional Tiered Relief:**  Defendants have agreed to provide the following additional relief to the Settlement Class:

**Tier 1 Claims – Fee Holiday Extension**: Each Settlement Class Member will be entitled to a one-month extension of the Fee Holiday that Green Dot previously provided. Settlement Class Members will not be required to submit Claim Forms in order to receive compensation based on Tier 1 Claims. (SA § IV.2(a).)

In addition to receiving benefits under Tier 1, Settlement Class Members may make a claim under either Tier 2 or Tier 3 to receive cash payments for losses incurred as a result of the Service Disruption, provided they meet the requirements described in the Settlement Agreement

**Tier 2 Claims – Payments for Losses Without Documentation**: Settlement Class Members who attempted to and were unable to use their Prepaid Cards to access or spend their account funds from May 15, 2016 through May 22, 2016 as a result of the Service Disruption and suffered a loss as a result may submit a Claim Form without supporting documents to receive a payment of up to $100. (SA § IV.3(a).) Tier 2 payments will be reduced by any prior payments Settlement Class Members already received from Green Dot as restitution for the Service Disruption (e.g., $50

account credit and individual compensation provided by Green Dot[3]), other than the Fee Holiday. (SA § IV.3(b).)  Defendants have agreed to pay up to $2 million to satisfy valid Tier 2 claims.  (SA § IV.3(c).)  If the amount of valid Claims exceeds $2,000,000, all Tier 2 payments will be reduced on a *pro rata* basis.  (*Id.*)  If the amount of valid Claims is less than $2,000,000, the difference between the claimed amount and the Tier 2 Maximum shall be made available to expand the Tier 3 Maximum as described below.  (SA § IV.3(a).)

**Tier 3 Claims – Payment for Substantiated Losses**: Settlement Class Members who were unable to use their Prepaid Cards to access or spend their account funds as a result of the Service Disruption and suffered loss may submit a Claim Form with documents to substantiate their losses to receive a payment of up to $750. (SA § IV.4(a).). Tier 3 payments will be reduced by any prior payments Settlement Class Members already received from Green Dot as restitution for the Service Disruption, other than the Fee Holiday. (SA § IV.4(b).)  Defendants have agreed to pay up to $1.5 million to satisfy valid Tier 3 claims. (SA § IV.4(c).)  Should the total value of valid Tier 3 claims exceed $1.5 million plus the rollover from Tier 2, then all payments will be reduced on a *pro rata* basis. (*Id.*)

**Minimum Contribution:** If the total value of valid Tier 2 and Tier 3 claims combined is less than $1.5 million, then the difference between the Minimum Payment and the amounts to be paid to Settlement Class Members for Tier 2 and Tier 3 claims shall be distributed to one or more *cy pres* recipients approved by the Court.

**Claims Verification Process**:  These Tier 2 and Tier 3 Claims will be subject to a two-part verification process described below. (SA § IV.4(a).)  Any Tier 3 Claims

---

[3] In the wake of the Service Disruption, some Settlement Class Members reached out to Green Dot seeking compensation for their losses.  Green Dot reviewed and resolved those claims on an individual basis.  Green Dot paid approximately $1.1 million through these individualized courtesy credits to Settlement Class Members.  *See*, Supp. Decl. of Teresa Watkins, Exhibit 3. Any such payments received by Settlement Class Members will be offset against a Tier 2 or Tier 3 claim made pursuant to the Settlement.

that are not supported by sufficient documentation will be reclassified and processed as Tier 2 Claims. (SA § IV.5(a).)

Settlement Class Members do not have to submit any Claim Form or documents to receive benefits under Tier 1. (SA § IV.6(a).)  To receive cash payment under Tiers 2 and 3, however, Settlement Class Members must submit a valid Claim Form by the Claims Deadline. (SA § IV.6(b).)  Under both Tiers, Settlement Class Members must submit, under penalty of perjury, an explanation as to what losses they incurred as a result of the Service Disruption. (*Id.*)  Green Dot will confirm, according to its business records, that the Settlement Class Member held a Prepaid Card at the time of the Service Disruption, attempted to and was unable to access or spend their account funds as a direct result of the Service Disruption, and was issued notice of this Settlement. (*Id.*)  To receive payment under Tier 3, Settlement Class Members must also submit Reasonable Documentation to support their losses. (SA § IV.6(d).)  Any Tier 3 Claim submitted without Reasonable Documentation shall be processed as a Tier 2 Claim.  The on-line Claim Form will be coded such that a Claim cannot be submitted electronically without all of the required information in order to reduce deficiencies in submissions.

### 3.   Notice to the Class

The Settlement provides a comprehensive notice program developed with the assistance of Epiq Systems, a firm that specializes in settlement administration and development of class action notice plans The Notice Program has two components: (1) Mail Notice and (2) Notice on the Settlement Website. The proposed Notices are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances.  Green Dot, through its business records, is able to identify which holders of accounts included in the Wave Three Conversion experienced a disruption in service.

The Notices, jointly drafted and approved by the Parties, provide Settlement Class Members with all required information so that each member may make an

informed decision regarding participation in the Settlement.  The Notices will include, among other information: information regarding the nature of the lawsuit; a description of the material terms of the Settlement; the class definition; the deadline by which Settlement Class Members must submit Request for Exclusion Forms or objections; the date upon which the Final Approval Hearing will occur; the address of the Settlement Website at which Settlement Class Members may access this Agreement; the telephone number of the Settlement Administrator if additional information is needed; and other related documents and information.  The Notices will also advise that the Claim Form will be available online for electronic submission or download or by contacting the Settlement Administrator for a paper copy.

**Direct Mail Notice.** Within 30 days after the Court preliminarily approves the Settlement (the "Notice Deadline"), the Settlement Administrator will mail notice of the Settlement to all Settlement Class Members at the address on file in Green Dot's business records.   For any mailed notices that are returned undeliverable and where a forwarding address is available, the Settlement Administrator will re-mail the notice to the forwarding address.  For any mailed notices that are returned undeliverable without a forwarding address, the Settlement Administrator will use reasonable efforts to identify updated mailing addresses, such as running the mailing address through the National Change of Address Database, and re-mail the notice to the extent updated addresses are identified. The Settlement Administrator will make one attempt to re-mail any Mail Notices that are returned as undeliverable.  This method was negotiated by the Parties to maximize the Settlement Class Member response rate while ensuring cost effective administration of the Settlement.

**Settlement Website.**  The Settlement Administrator will also create a website dedicated to this Settlement, which will be public by the Notice Deadline, for the purposes of disseminating information and details on the Settlement, filing a Claim, opting out of the Settlement, objecting to the Settlement, deadlines related to the Settlement, pleadings, and other information relevant to Settlement Class Members.

The website will make available to Settlement Class Members the Short Form Notice, Long Form Notice, Claim Form, and opt-out form approved by the Court.  Settlement Class Members will be able to file Tier 2 and Tier 3 claims electronically on the website.  Settlement Class Members will also be able to download and print a Claim Form from the website.  Further, the Settlement Administrator will maintain a toll-free number where Settlement Class Members can obtain additional information and request mailed claim forms.

### 4.      Opt-Out and Objection Procedures

Settlement Class Members may exclude themselves from the Settlement by completing and mailing the proposed opt-out form to the Settlement Administrator, postmarked no later than 75 days after the Notice Deadline.  (SA § VII.3.)  Settlement Class Members may also object to the Settlement, and Class Counsel's request for attorneys' fees, costs and expenses, and Service Awards. To do so, a Settlement Class Member cannot opt out of the Settlement, and must submit the objection in writing electronically or by mail to Court as identified in the notice, postmarked no later than 75 days after the Notice Deadline.  (*Id.* § VII.4.)  The objection must set forth, among other things, (a) the case name; (b) the objector's name, address, Prepaid Card account number, and telephone number; (c) explanation of membership in Settlement Class; (d) grounds for objection; and (e) identity of representing counsel, if any.  (*Id.*)

### 5.      Administrative Costs

Defendants will pay the costs associated with providing notice to the Settlement Class and costs associated with administering the Settlement, including the costs of the Settlement Administrator.  (SA §§ VI.3, VII.8.)  The parties estimate such costs to be approximately $145,350, which will be paid separately by Defendants and will not reduce the relief provided for the Settlement Class.  (*Id.*)

### 6.      Attorney Fees, Costs, and Service Awards

After reaching initial agreement on benefits to Settlement Class Members, the parties separately negotiated Class counsel's claims for attorney fees, costs and

reimbursement of litigation expenses, as well as the Class Representatives' service awards.  (SA § I.M.)  Class Counsel will apply to the Court for an award of no more than $750,000 in attorneys' fees, costs and expenses.  Defendants have agreed to pay any attorneys' fees, costs and expenses awarded by the Court, not to exceed $750,000, separately from the relief obtained for the Settlement Class.  Class Counsel will also apply for service awards of no more than $500 for each of the Named Plaintiffs in recognition of the commitment and effort they have contributed to the litigation for the benefit of the Settlement Class.  Defendants have also agreed to pay any service awards approved by the Court, not to exceed $500 per Named Plaintiff, separate from the relief for the Settlement Class.  In sum, any award of attorneys' fees, costs and expenses and service awards will not reduce the benefits secured for the Class.  (*Id.* at § X.1-2.).  By no later than 21 days before the deadline to object to the Settlement, Class Counsel will submit to the Court a detailed memorandum seeking attorneys' fees, costs and expenses pursuant to Section X of the Settlement Agreement.

## 7.    Release

In exchange for the benefits provided under the Settlement, Settlement Class Members will release Defendants and related entities from all known claims related to the alleged claims or events in the Actions, the Amended Consolidated Complaint or the Service Disruption as more fully described in the Settlement Agreement.  (SA § IX.)  Under the guidance of the Court, the parties have narrowed the Release, removing the California Section 1542 waiver.  The Released Claims do not include any claims arising from or relating to any conduct by Defendants after the date the Settlement Agreement is executed.  (*Id.*)

//

//

//

//

## IV.   ARGUMENT

### A.   The Settlement Merits Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval.  The approval process typically takes place in two stages.  For the first stage, a court preliminarily approves the settlement pending a fairness hearing, certifies the class for settlement purposes and authorizes notice to be given to the settlement class. *Manual for Complex Litigation (Fourth)* §21.632 at 320 (2004).  Once the class has received notice and has an opportunity to comment on the settlement, the court then holds a final settlement hearing.  *Id.* §21.633 at 321-22.

The purpose of preliminary approval is to afford the Court an opportunity to review the proposed settlement before the parties engage in the costly and time-consuming process of disseminating class notice.  *See Newberg on Class Actions* §13:10 (5th ed.).  Preliminary approval affords the proposed settlement a presumption of fairness at the final approval stage.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Courts within the Ninth Circuit use a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) falls within the range of possible approval; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) has no obvious deficiencies.'"  *Spann v. J.C. Penney Corp.* ("*Spann I*"), 314 F.R.D. 312, 319 (C.D. Cal. 2016) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. 2011)).  The Named Plaintiffs respectfully

submit that each of these requirements are met here and that the proposed Settlement merits Court approval.

### 1.     The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations Between Experienced Counsel

As a starting point, the Court should assure itself the settlement was not the product of collusion among the negotiating parties.  *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  When a settlement is "the product of an arms-length, non-collusive, negotiated resolution . . . courts afford the parties the presumption that the settlement is fair and reasonable."  *Spann I*, 314 F.R.D. at 324 (internal quotations and citation omitted).  However, as noted in *In re Bluetooth*, where a settlement is negotiated before formal class certification, the Court must consider whether there is evidence of collusion or other conflicts of interest. *In re Bluetooth*, 654 F.3d at 947. Courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.*  In this instance, neither the process in negotiating the settlement nor the settlement terms indicate a collusive deal.

Counsel for the Named Plaintiffs are greatly experienced in litigating and resolving consumer class actions, and have developed a strong understanding of the strengths and weaknesses present in such cases and what type of settlement might be fair, reasonable, and adequate under the circumstances.  (Supplemental Declaration of John A. Yanchunis, attached hereto as Exhibit 2.)  This experience includes achieving final approval of a class action settlement involving a similar service disruption experienced by RushCard prepaid debit cardholders in *Fuentes v. UniRush, LLC,* Final Approval Order, No. 1:15-cv-08372 (S.D.N.Y. Sept. 12, 2016), ECF No. 49. The "involvement of experienced class action counsel" supports the presumption that a settlement is fair. *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, *et al.,*

1997 WL 450064, at \*5 (N.D. Cal. July 18, 1997) (citations omitted); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at \*8 (C.D. Cal. July 28, 2014).

Although formal discovery did not occur, the Parties exchanged a substantial amount of information through an informal process. As reflected in the Supplemental Declaration of Teresa Watkins, attached as Exhibit 3, Defendants were forthcoming with information related to the preparation for the processor conversion, the technical issues arising from the conversion and the identification of Class members. The auditing conducted by Defendants during the conversion allowed Defendants to quickly identify which individual accounts were affected and how. The information shared through this informal process provided a sound basis that allowed the Parties to weigh the terms of the Settlement against the risks of continued litigation.

In addition, the settlement terms are favorable to the Class and meet the demands in the Consolidated Complaint. (ECF No. 70 at 22-23.) In contrast to *Bluetooth* where the class received no monetary award, here all Class members will receive monetary relief. All Class members will receive monetary benefits under Tier 1 of the Settlement and Class members with losses may elect to file a claim under Tier 2 or Tier 3 for additional monetary relief. (SA § IV.2(a) – 4(a).) These terms strongly suggest that Class benefits were not traded for individual benefits. *See Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at \*10 (N.D. Cal. Sept. 29, 2016) ("the favorable nature of the settlement . . . negates any collusion concerns.").

### 2. The Settlement has no Obvious Deficiencies and Falls Within the Range of Possible Approval.

In determining whether a settlement falls within the range of possible judicial approval, courts "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. "Of course, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. Of S.F.*,

688 F.2d 615, 624 (9th Cir. 1982) (internal quotations omitted).  "Nevertheless, there exists the risk that the interests of some class members may be sacrificed in the effort to achieve the greatest good for the greatest number."  *Id.* (internal quotations omitted).

The proposed Settlement provides immediate and significant benefits for Settlement Class Members that they otherwise may not receive.  The proposed Settlement would provide Settlement Class members with virtually everything Plaintiffs asked for in the Consolidated Complaint.  Settlement Class Members with active Green Dot accounts at the time of these disbursements already received more than $3,300,000 through a two-month fee holiday and a $50.00 courtesy credit to their Green Dot accounts; moreover, some cardholders who contacted Green Dot regarding their specific losses received individualized courtesy credits totaling up to $1,100,000. If approved by the Court, Settlement Class Members will automatically receive a one-month period during which they will not be assessed any fees on their Prepaid Card, and up to $3.5 million for reimbursement of actual losses arising from the Service Disruption.  (SA § IV.3-4.).

In evaluating the Settlement, it is of course relevant to consider that amount that Settlement Class Members will recover individually. Settlement Class Members with an active Green Dot account previously received a two-month Fee Holiday, during which they were not assessed any monthly maintenance fees.  Settlement Class Members now will be entitled to an additional one-month Fee Holiday.  The monthly maintenance fee for the affected Prepaid Cards fell between a range of $3.00 - $7.95. Additionally, Settlement Class Members who had an active Green Dot account from the end of May 2016 through mid-June 2016 each received a credit to their account in the amount of $50.00.  If approved by the Court, Settlement Class Members may file a claim for reimbursement of financial or other losses suffered as a result of the Service Disruption.  Settlement Class Members who do not wish to submit supporting documentation but only to attest to having losses will be eligible for a payment of up

to $100.00 subject to the offsets described above and in the Settlement Agreement. Settlement Class Members who provide reasonable documentation of such losses will be eligible for a payment of up to $750.00 subject to the offsets described above and in the Settlement Agreement.

The forms of "discernible benefits" provided under the Settlement to Class Members "achieve the primary objective of the lawsuit" and weighs in favor of approving the settlement.  *See Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *4 (N.D. Cal. Sept. 10, 2012); *see also Stern v. Superior Court*, 129 Cal. Rptr. 2d 275, 282 (Cal. Ct. App. 2003).

If the parties had been unable to resolve this case through settlement, the litigation would likely have been protracted and costly.  Although the Named Plaintiffs and Class Counsel believe that the claims asserted are meritorious, continued litigation against Defendants posed significant risks that made any recovery uncertain. At the outset, continued litigation of this matter would require the Court to resolve two separate threshold questions concerning the viability of certifying the proposed Class.  First, the Court would have to decide the question of the arbitrability of the Plaintiffs' claims. Defendants have maintained that this provision should be enforced and that all claims should be submitted to individual arbitration proceedings. A victory by Defendants would have likely ended any relief being made available to any one class member as it is highly improbable that any class member would have pursued their claims in arbitration based on the amount of any one class member's claim and the costs of the arbitration.  Second, should this Court find that Plaintiffs' claims are not subject to arbitration, the Court would have to turn to the question of class certification and Defendants' contention that individualized factual inquiries and damages and legal variation among the laws of the states would preclude class certification.   "Even if plaintiff[s] were to prevail at trial, there is a real risk that plaintiff[s] could recover nothing."  *Spann I*, 314 F.R.D. at 327.

In light of these difficult issues, the monetary benefits of the Settlement are appropriate and the timing in which the benefits will be provided is significant.  Class members will receive benefits without taking any action; Defendants have paid or will pay those benefits automatically and immediately.  Further, Settlement Class Members can receive compensation for losses without having the burden of providing any documentation to support their damages. Settlement Class Members with more significant losses may file supporting documentation to seek greater relief.

The proposed Settlement is also well within the range of settlements approved in other consumer class actions.  In *Fuentes, et al. v. UniRush, LLC, et al.*, No. 1:15-cv-08372 (S.D.N.Y), the court granted final approval of a settlement that is substantially similar to the proposed Settlement here. The *Fuentes* matter involved similar claims arising from a service disruption of RushCard prepaid debit card services during a processing conversion to MasterCard.  In granting final approval of the RushCard settlement, the court found that the "[s]ettlement reflects an outstanding result for the Class in a case with a high level of risk."  Final Approval Order 5, ECF No. 49 (S.D.N.Y. Sept. 12, 2016).

While there are striking similarities between *Fuentes* and the present matter, there are stark differences that highlight the more favorable benefits that Class members are receiving under the presently proposed Settlement. The RushCard service disruption was the result of technical issues during a system-wide conversion that led to all RushCard account holders losing account access for different lengths of time. In the present matter, the Service Disruption, which was much more limited than what occurred in *Fuentes*, was due to various technical issues arising during one wave of conversion that had varying effects on a minority percentage of Green Dot cardholders.

Similar to the presently proposed settlement, the RushCard settlement provided class members with tiered reimbursements for losses related to the service disruption. Class members who submitted reasonable documentation were eligible to receive

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

payment of up to $500, and class members who did not submit documentation were eligible to receive payment of up to $100. The proposed Settlement in the present matter increases the maximum limit for documented losses to $750 per Class member.

In *Fuentes*, the parties negotiated a $6,500,000 maximum settlement contribution to resolve claims for approximately 400,000 class members. In comparison, the parties in the present matter have negotiated a $3,500,000 maximum settlement contribution to resolve claims for approximately 58,600 class members.

Additionally, the proposed Settlement provides a minimum settlement contribution of $1,500,000 for Tier 2 and 3 claims combined, a term that was not part of the RushCard settlement. This minimum is additional to the amounts already paid to Settlement Class Members and the amount to be paid under Tier 1 of the proposed Settlement. In evaluating the adequacy and reasonableness of this minimum contribution, the Parties had the benefit of the claims information from the RushCard settlement. For the Tier 2 and 3 benefits in that settlement, 35,334 claims were paid for a total of $3,439,768.64. (Declaration of John A. Yanchunis.) Based upon that claims rate (approximately 8.3%) and average claim value, the guaranteed minimum of $1,500,000 is well above any reasonable projection for the total of Tier 2 and 3 claims to be made in the presently proposed settlement. Indeed, the parties were guided by their experiences in the *Fuentes* case in determining Tier 2 and Tier 3 caps that were adequate, fair, and reasonable. Moreover, settlements with the structure of this proposed settlement—a minimum guaranteed payment, together with a maximum payment—have been approved by courts in this Circuit. *See, e.g.*, Order, *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-cv-01303-KJM-EFB, Dkt. No. 38 (E.D. Cal. Dec. 17, 2014) (approving a settlement agreement that contained both a cap and a de facto floor on total class member payments); Order Granting Plaintiffs' Motion for Final Settlement Approval, *Vandervort v. Balboa Capital Corp.*, No. SACV 11-1578-JLS (JPRx), Dkt. No. 126 (C.D. Cal. Mar. 27, 2014) (approving an agreement that provided for a maximum and minimum total payout).

The proposed total Settlement value of up to $8,100,000 (including the more than $3.3 million already provided through the Fee Holiday and Courtesy Credit, the additional $1.1 million in individualized courtesy credits (understanding that a portion of these monies went to individuals represented by counsel and, thus, fall outside the class definition), the expected $250,000 value for Tier 1 awards, and the range of $1.5–3.5 million for Tier 2 and Tier 3 claims) is substantial by any measure and certainly falls within a range of possible approval.  This is particularly true given the real and substantial risk that Plaintiffs could have recovered nothing if litigation had continued due to the arbitration provision in the Cardholder Agreement and the proof of damages that could be recovered in this case not being certain.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class.

Next, the Court should examine whether the Settlement Agreement provides preferential treatment to any class member.  This analysis turns, among other things, on whether there is any disparity among what Class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015); *accord G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *14 (N.D. Cal. July 30, 2015) (analyzing whether the settlement singles out particular class members or whether it instead "appears uniform").

Here, Plaintiffs are seeking certification of a single class and all members of the proposed class are entitled to the same benefits.  All Settlement Class Members who do not exclude themselves from the Settlement will be automatically provided the Fee Holiday Extension.  All Settlement Class Members will additionally be eligible to submit claims for payment under Tier 2 or Tier 3. The dollar amounts of these reimbursements may vary, but those differences reflect the differing amounts of losses

21

that Settlement Class Members incurred as a result of the Service Disruption.  Thus, each Settlement Class Member who submits a valid claim will be paid proportionate to the harm they suffered.

The Settlement Agreement authorizes a Service Award for each Named Plaintiff, in an amount to be determined by the Court but not to exceed $500, in recognition for the services they performed on behalf of the entire class that resulted in the Settlement.  (SA § I.M.)  If approved by the Court, these Service Awards will be paid by Defendants separately from the relief obtained for the Settlement Class. Thus, the Service Awards will have no bearing on Class Relief.

In evaluating whether the Settlement grants preferential treatment to Plaintiffs, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions, Inc.,* 715 F.3d 1157, 1165 (9th Cir. 2013). More important considerations, however, are "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Any Service Awards requested for the Named Plaintiffs will not be "unreasonably large and thus unfair." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).  Rather, the Service Awards contemplated here are much lower than "typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Online DVD-Rental*, 779 F.3d at 947-48 (affirming incentive awards of $5,000 to each of nine class representatives).   The amount requested is appropriate given the time, effort and risk of each Named Plaintiff's participation in this action.  *See*, Declarations of Named Plaintiffs, attached hereto as composite Exhibit 4.

Critically, the Settlement is not conditioned on the Court's approval of the Service Awards. *See Spann I*, 314 F.R.D. at 328-29 ("because the parties agree that the Settlement Agreement shall remain in force regardless of any service awards, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members.").  Accordingly, the Named Plaintiffs' interests did not conflict with or diverge from the interests of the Settlement Class. *Radcliffe*, 715 F.3d at 1161.

### C.   The Court Should Certify the Settlement Class

#### 1.   The Settlement Class Meets The Requirements of Rule 23(a).

In connection with granting preliminary approval, the Court should also confirm that the proposed settlement class meets the requirements of Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  The prerequisites for class certification under Rule 23(a) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each of which is satisfied here.  Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

The proposed Settlement Class, set forth above, encompasses thousands of Settlement Class Members and thus readily satisfies the numerosity requirement.  *See Hanlon*, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so numerous that joinder is impracticable.'"); *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) (finding that a "class of at least forty members presumptively satisfies the numerosity requirement").

The proposed Settlement Class also satisfies the commonality requirement of Rule 23(a), which requires that class members' situations "share a common issue of law or fact, and [be] sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  Each of the Settlement Class Members held Prepaid Cards during the

Service Disruption, and their legal claims involve the same Service Disruption.  The common issues that their claims share include, but are not limited to, (i) whether Defendants breached their contracts with Plaintiffs and the Settlement Class, (ii) whether Defendants owed duties to Plaintiffs and the Settlement Class Members and whether those duties were breached, (iii) whether Defendants' conduct was unfair or unlawful; and (iv) whether Plaintiffs and the Settlement Class Members suffered damages as a result of the Service Disruption.  *See* ECF No. 70, ¶ 60.

The final requirements of Rule 23(a)—typicality and adequacy—are satisfied by the proposed representative Plaintiffs.  Like the other members of the Class, Named Plaintiffs each had Prepaid Cards during the Service Disruption, and suffered the same or similar alleged injury—namely, they were denied access to their funds.  *See Wolin*, 617 F.3d at 1175 ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect.").  In addition, Named Plaintiffs are adequate class representatives with no conflicts of interest and are represented by qualified and competent counsel.  *Hanlon*, 150 F.3d at 1020.

### 2.    The Settlement Class Meets The Requirements Of Rule 23(b)(3).

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.  Here, the proposed class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy.  *Id.*  Settlement Class Members' claims depend primarily on whether Defendants are liable for the Service Disruption, and thus raise just the sort of predominantly common questions courts have found to justify class treatment.  *See, e.g., Spann I*, 314 F.R.D. at 322 (finding predominance met when conduct at issue is focused primarily on defendant's actions and not on individual plaintiffs); *Haley v. Medtronic, Inc*., 169 F.R.D. 643, 650-51 (C.D. Cal. 1996) (observing "defendant's argument ignores the fact that plaintiffs'

claims actually focus on defendant's liability and defendant's conduct with regard to the leads . . . Thus, because defendant's conduct with regard to the leads—and, hence, with regard to the plaintiffs themselves—involves questions of common fact primarily, the Court finds that this factor alone does not destroy the predominance of common questions.").

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.  Finally, class proceedings here would not present the sort of intractable management problems that sometimes override the collective benefits of class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

### 3. The Court Should Appoint Class Counsel.

Plaintiffs request that the Court appoint John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Class Counsel, and as Class Counsel, Richard D. McCune and Joseph G. Sauder of McCune Wright Arevalo LLP; Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC; and Daniel C. Girard and Linh G. Vuong of Girard Gibbs LLP.  In evaluating the appointment of class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims, including the interviews of numerous class members who contacted Class Counsel, and the prosecution of this action. Since the outset of this litigation, the firms have

cooperatively and effectively collaborated to prosecute, and ultimately resolve, this case on behalf of their clients and the Class.  They have performed work critical to achieving benefits for the Class, including by investigating the facts surrounding the Service Disruption, researching and analyzing legal claims under state and federal law and common law, preparing and filing a Consolidated Complaint, participating in meetings with defense counsel to discuss the parties' respective positions, negotiating the proposed Settlement, and drafting this motion for preliminary approval.  The proposed Class Counsel firms have significant experience in similar class actions, such as Mr. Yanchunis and Ms. Martin who served as co-Lead Counsel and Mr. Sauder who served as Class Counsel in *Fuentes*.  The firms have the experience to ensure the implementation of the Settlement and the resources to resume their representation of the Settlement Class.  The respective firm resumes for each of the attorneys seeking to be appointed Class Counsel is attached as Exhibit C to the Declaration of John Yanchunis submitted herewith (as Exhibit 2).

### D.   The Court Should Order Dissemination of Class Notice As Proposed By the Parties

#### 1.   The Settlement Provides the Best Method of Notice Practicable Under the Circumstances.

The federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e).  Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Notice will be directly provided by U.S. Mail to the address on file in Green Dot's business records for each Settlement Class Member.  (SA § VII.2.)  Appropriate steps will also be taken to re-mail notices that are returned undeliverable and to locate current address information through the National Change of Address Database.  (*Id.*)  This proposed notice plan is designed to reach as many of the Settlement Class

Members as possible, and fully comports with due process under the circumstances of this case. The proposed notice plan thus provides the best method of notice practicable for the Class. *See, e.g., Spann I*, 314 F.R.D. at 331 (approving substantially similar notice plan); *Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding best notice practicable where reasonable efforts were taken to ascertain class members addresses).

### 2. The Proposed Form of Notice Adequately Informs Settlement Class Members of Their Rights in Connection with the Settlement.

The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e) requires that a notice describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re DVD-Rental*, 779 F.3d at 946 (quoting *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Circ. 2012)).

The forms of notice proposed by the parties—the Mail Notice, Short Form Notice and Long Form Notice—clearly comply with those requirements. Each notice provides simple and straightforward information about the nature of the action, the terms of the Settlement, the class definition, the underlying litigation, Defendants' defenses, the fact that Settlement Class Members may appear through counsel, the process for requesting exclusion from the Settlement, and the binding effect of the Settlement on Settlement Class Members if they do not request exclusion from the Court. (*See* SA, Ex. B-D.) Each of the notices also direct Settlement Class Members to the Settlement Website for more information. While the three Notices contain

substantially similar information to comply with the requirements of Rule 23(e), they each vary in the level of detail provided.

The Mail Notice is a two-page letter that will be mailed to Settlement Class Members. The Mail Notice will advise the recipient that he or she has been identified as a potential Class Member through Green Dot's business records. The Mail Notice will also provide the Settlement Class Member a unique Claim Number to use for filing a claim. This Claim Number is not required for filing a claim, but will assist the Settlement Administrator in the matching of a Claim Form to the list of Settlement Class Members for verification purposes.

The Long Form Notice is a ten-page document that provides the most detail regarding the Settlement, the benefits thereunder, and the rights and options of Class members. The Long Form Notice contains a three-page summary of the settlement, but then provides greater detail broken down into twenty-three separate sections written in question and answer format.

In three pages, the Short Form Notice provides a little more detail than the summary found at the beginning of the Long Form Notice. The Short Form Notice is written in question and answer format similar to the Long Form Notice. By both the Short Form and Long Form Notices being posted on the Settlement Website, Settlement Class Members will have multiple options for gathering the necessary information to make an informed decision regarding participation in the Settlement.

Accordingly, the proposed notice program complies with the standards of fairness and completeness required of a settlement notice disseminated under authority of the Court.

### 3. Notice of the Settlement Will Be Provided to Appropriate Federal and State Officials.

Notice of the proposed settlement will also be provided to the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C.

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

§ 1715. (SA § V.2.)  Defendants will provide these government officials with copies of all required materials so that the states and federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to final approval.

**E.**     **The Selected Cy Pres Recipient Is Appropriate**

The Settlement provides that if an insufficient number of valid and timely claims are submitted and paid to exhaust the minimum guaranteed amount of $1.5 million, then the Defendants shall pay the difference of the Minimum Payment ($1.5 million minus the total value of valid claims filed across Tier 2 and Tier 3), to Consumer Action, subject to Court approval.  (S.A. § IV.5.)  The *cy pres* doctrine allows for unclaimed or non-distributable portions of a class action settlement to be distributed in a manner that still indirectly benefits the class.  *See*, *e.g.*, *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038-39 (9th Cir. 2011); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990)).  A *cy pres* award must qualify as "the next best distribution" to settlement fund flowing directly to class members. *Six Mexican Workers*, 904 F.2d at 1305.  Accordingly, there must be "a driving nexus" between the class and the *cy pres* recipient.  *Nachshin*, 663 F.3d at 1038.

Consumer Action is a non-profit organization with a stated mission to "empower[] low- and moderate-income, limited-English-speaking, and other underrepresented consumers nationwide to financially prosper through education and advocacy." [4]  For more than 40 years, Consumer Action has helped to educate and advocate for consumers in a variety of areas, including banking, credit, lending and financial services.

Through programs focused on financial literacy, Consumer Action has worked to educate unbanked and underbanked consumers about how to establish and use traditional banking services and make wiser banking and financial decisions.

---

[4] See, http://www.consumer-action.org/about/articles/mission/ (last visited February 13, 2017).

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

According to the FDIC, in 2015, 7% of U.S. households were considered "unbanked," meaning that they are without bank accounts, and another 19.9% are "underbanked," meaning they have bank accounts but also rely upon non-traditional banking services.[5] Additionally, between 2013 and 2015, the percentage of households that used a reloadable prepaid payment card increased from 7.9% to 9.8%.[6]  Use of prepaid payment cards is most prevalent amount underbanked households (an estimated 27.1%). [7]  Thus, the Settlement Class Members are the targeted audience for the efforts of Consumer Action, making the organization an appropriate *cy pres* recipient.

### F.   <u>The Court Should Set a Schedule for Final Approval</u>

The next steps in the settlement approval process are to schedule a final approval hearing, notify the class of the Settlement and hearing, allow Settlement Class Members an opportunity to file any objections or comments regarding the Settlement, and allow Plaintiffs to conduct appropriate objector discovery if necessary.  *See, e.g.,* Final Order and Judgment, *Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-DV-02125 (N.D. Cal. July 5, 2012) (noting that objector repudiated his objection in deposition testimony); *In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *2 (N.D. Cal. May 29, 2012) (objector depositions authorized to inquire into objectors' membership in the class and ability to post an appellate bond).

Toward these ends, the parties have provided the Court with a proposed order that provides for the following schedule:

//

---

[5] 2015 FDIC National Survey of Unbanked and Underbanked Households, available at: https://www.fdic.gov/householdsurvey/2015/2015execsumm.pdf, at 1 (last visited February 13, 2017).

[6] *Id*. at 6.

[7] *Id*.

| Settlement Administrator to complete mailing of class notice: | Later of 30 days after entry of a Preliminary Approval order |
|---|---|
| Deadline to file affidavit attesting that notice was disseminated as ordered: | 7 days after Notice Deadline |
| Deadline to object to the settlement, or opt-out of the settlement | 75 days after Notice Deadline |
| Deadline to submit a claim: | 30 days after the Effective Date |
| Plaintiffs to file a fee and service awards application: | 21 days prior to Objection Deadline |
| Plaintiffs to file papers in support of final approval of the settlement | 21 days prior to Objection Deadline |
| Final Approval hearing: | 90 days, or shortly thereafter, after amended CAFA notices mailed |

### III.   **CONCLUSION**

Because there are no "obvious deficiencies" in the proposed Settlement, the Settlement is well within the range of possible approval, and there are sufficient grounds to submit it to Settlement Class Members, the standards for granting preliminary approval are readily satisfied here.  Plaintiffs respectfully submit that this settlement is fair, adequate, and reasonable; that the requirements for final approval will be satisfied; and that Settlement Class Members will be provided with notice in a manner that satisfies the requirements of due process and Fed. R. Civ. P. 23(e).

As discussed above, Named Plaintiffs and Class Counsel submit that the proposed Settlement is in the best interest of the Class and represents a fair, reasonable and adequate recovery particularly in light of the risks and costs of litigation, the arbitration provision contained in customer agreements, and the swiftness of the Settlement and the immediate recovery provided in the proposed plan of distribution to the Class.

1   For the foregoing reasons, the parties respectfully request that the Court enter

2   the accompanying Proposed Order granting preliminary approval of the proposed

3   Settlement, certifying the settlement class, appointing Plaintiffs' attorneys as Class

4   Counsel, directing dissemination of class notice, and setting a hearing for the purpose

5   of deciding whether to grant final approval of the Settlement.

6

7   DATED: February 13, 2017                    Respectfully submitted,

8

9                                              **MORGAN & MORGAN**
                                               **COMPLEX LITIGATION GROUP**

10

11                                             BY:   */s/ John A. Yanchunis*
                                                     John A. Yanchunis (*pro hac vice*)
12                                                   201 North Franklin Street 7th Floor
                                                     Tampa, Florida  33602
13                                                   (813) 223-5505
                                                     (813) 223-5402 (fax)
14

15

16                                             **MCCUNE•WRIGHT•AREVALO, LLP**
                                                     Richard D. McCune
17                                                   State Bar No. 132124
                                                     rdm@mccunewright.com
18                                                   3281 East Guasti Road, Suite 100
19                                                   Ontario, California  91761
                                                     Telephone:  (909) 557-1250
20                                                   Facsimile:  (909) 557-1275
21

22                                             **MCCUNE•WRIGHT•AREVALO, LLP**
                                                     Joseph G. Sauder (*pro hac vice*)
23                                                   Matthew D. Schelkopf (*pro hac vice*)
24                                                   Joseph B. Kenney (*pro hac vice*)
                                                     555 Lancaster Ave
25                                                   Berwyn, PA 19312
26                                                   Telephone: (610) 200-0580
27

28

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICE OF JEAN SUTTON MARTIN PLLC**
    Jean Sutton Martin(*pro hac vice*)
    2018 Eastwood Road, Suite 225
    Wilmington, North Carolina 28403
    (910) 292-6676
    (888) 316-3489 (fax)

**GIRARD GIBBS LLP**
    Daniel C. Girard
    State Bar No. 114826
    601 California Street, 14th Floor
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Facsimile: (415) 981-4846

*Attorneys for Plaintiffs and the Proposed Settlement Class*

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR