John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Morgan & Morgan Complex Litigation Group
201 North Franklin Street 7th Floor
Tampa, Florida  33602
(813) 223-5505 (tel)
(813) 223-5402 (fax)

*Attorney for Plaintiffs*

[List of Counsel Continued on Signature Page]

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LEWIS, DANIELLE HALL, KATHLEEN CROOK On Behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREEN DOT CORPORATION; GREEN DOT BANK; MASTERCARD INCORPORATED; and MASTERCARD INTERNATIONAL INCORPORTED,<br><br>Defendants. | Case No.: 2:16-cv-03557-FMO-AGR<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Fernando M. Olguin<br>Courtroom 22<br>Hearing Date: November 2, 2017<br>Hearing Time: 10:00 a.m. |

## __NOTICE OF MOTION__

PLEASE TAKE NOTICE Plaintiffs Jason Lewis, Danielle Hall, and Justin Thornton will and hereby do respectfully move the Court for an Order granting final approval of the proposed Settlement, and for other related relief.

Plaintiffs' motion is based on this notice; the accompanying Memorandum of Points and Authorities and all attachments thereto; and, all records, pleadings and papers filed in this action.  This Motion is unopposed by Defendants.


DATED: October 12, 2017                    Respectfully submitted,


                                           By: /s/ John A. Yanchunis
                                           MORGAN & MORGAN
                                           COMPLEX LITIGATION GROUP
                                           John A. Yanchunis
                                           201 North Franklin Street 7th Floor
                                           Tampa, Florida 33602
                                           (813) 223-5505
                                           (813) 223-5402 (fax)

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     OVERVIEW OF THE LITIGATION AND PROPOSED SETTLEMENT ........ 1

        A.     The Litigation ............................................................................... 1

        B.     Settlement Negotiations ................................................................. 2

        C.     Overview of the Proposed Settlement ........................................... 3

               1.     The Proposed Settlement Class ........................................... 3

               2.     Settlement Relief ................................................................ 3

               3.     Administrative Costs ........................................................... 6

               4.     Release ................................................................................ 6

III.    THE SETTLEMENT MERITS FINAL APPROVAL ..................................... 6

        A.     The Notice Requirements Were Appropriate And Have Been Satisfied... 7

        B.     The Results of the Notice Program to Date .................................. 8

        C.     The Settlement Is Fair, Reasonable, and Adequate. ................... 11

               1.     The strength of Plaintiffs' case and the risk, expense, complexity,
                      and likely duration of further litigation........................... 11

               2.     The risk of maintaining class action status throughout the trial. ... 12

               3.     The amount offered in settlement. .................................... 13

               4.     The extent of discovery completed and the stage of the
                      proceedings. ...................................................................... 13

               5.     The experience and views of counsel. ............................... 14

               6.     The presence of a governmental participant. ................... 15

ii

7.    The reaction of the class members of the proposed settlement. ....15

D.   The Settlement Is Not the Product of Collusion. ....................................16

E.   The Settlement Class Still Satisfies the Requirements of Rule 23 .........18

IV.   CONCLUSION.................................................................................................18

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) ....................7, 11

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)..................15

*Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938, 2009 WL 587844 (S.D. Cal. 2009) ......16

*Bautista v. Harvest Mgmt. Sub LLC*, No. 12-10004, 2014 WL 12579822

    (C.D. Cal. July 14, 2014)......................................................................................15

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ................... passim

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .....................................7

*Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354, 2012 WL 5941801

    (E.D. Cal. 2012)....................................................................................................15

*Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995, 2012 WL 2872788 (E.D. Cal. 2012)......16

*In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677 (D. Ariz. 2012) ......18

*In re Bluetooth Headset Prod. Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935

    (9th Cir. 2011) ...............................................................................................11, 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..................................13

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ......................................13

*Nat'l Rural Telecommc'ns v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)......14, 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615

    (9th Cir. 1982) ........................................................................................................7

*Rannis v. Recchia*, 380 F. App'x. 646, (9th Cir. 2010) .....................................................8

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)). .......................................17

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) ........................................8

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...........................................................7

**Statutes**

28 U.S.C. § 1715(d) ...........................................................................................................7

**Rules**

Fed. R. Civ. P. 23(b) .........................................................................................................18

Fed. R. Civ. P. 23(e).........................................................................................................6, 7

Rule 23(c)(2)(B)..................................................................................................................7

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs, on behalf of themselves and the Settlement Class, respectfully request that the Court issue an order granting final approval to the Settlement Agreement, certifying the Settlement Class for settlement purposes only, and enter a final judgment dismissing this case with prejudice.[1] The Court preliminarily approved the Settlement on June 12, 2017. (ECF No. 102.) As discussed below, the terms of the Settlement create substantial benefits for the thousands of Settlement Class members; the Settlement is fair, reasonable and adequate; and meets all of the requisite criteria for final approval under rule 23(e), Fed. R. Civ. P. The overwhelmingly positive response by members of the Settlement Class confirms that final approval is warranted. No objections have been filed. In addition, only one Settlement Class Member requested to be excluded were received. A proposed Order granting final approval is submitted herewith.

## II.   OVERVIEW OF THE LITIGATION AND PROPOSED SETTLEMENT

### A.   The Litigation

This litigation is a result of the consolidation of two putative class actions—*Lewis, et al. v. Green Dot Corporation,* No. 2:16-cv-03557 (C.D. Cal.), and *Crook v. Green Dot Corporation*, No. 2:16-cv-04172 (C.D. Cal.). Plaintiffs Jason Lewis, Danielle Hall, and JC Montgomery filed the *Lewis* complaint on May 22, 2016 and alleged that Defendants' conduct constituted negligence, unjust enrichment, breach of contract, conversion, and violations of California consumer protection statutes. (*See Lewis* Action, ECF No. 1.) Plaintiff Kathleen Crook filed her suit on June 10, 2016 and asserted materially similar claims as the *Lewis* Action. (*See* Crook Action, ECF No. 1). On July 14, 2016, the Court consolidated the *Lewis* and *Crook* Actions. (*See* Lewis Action, ECF No. 63).

---

[1] The Amended Settlement Agreement ("Settlement" or "SA") was submitted with Plaintiffs' Amended to their Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 90-1.) The capitalized terms used in this Memorandum are defined in Section II of the SA.

After the Court consolidated the actions, Class Counsel coordinated their resources and expertise to effectively and efficiently prosecute this case. Class Counsel continued to communicate with other affected Cardholders to further investigate the Service Disruption and its effects, researched and evaluated potential claims, and strategized on types of relief suitable for the Class.

On September 9, 2016, Plaintiffs Jason Lewis, Danielle Hall, and Justin Thornton[2] filed a consolidated complaint on behalf of all Cardholders affected by the Service Disruption. Named Plaintiffs alleged that Defendants' failure to make their money available to them violated the California False Advertising Act, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and constituted negligence, unjust enrichment, breach of contract, conversion, and breach of bailment contract. (*See* Lewis Action, ECF No. 70).

**B.    Settlement Negotiations**

On July 15, 2016, counsel for the Parties participated in a full-day meeting in Los Angeles to exchange information on the parties' respective positions as to the facts and the law underlying the litigation, including the cause of the Service Disruption, the consequences of the Service Disruption on Cardholders, the size of the proposed Class, and the strengths and weaknesses of the allegations in support of, and defenses to, the litigation, including the applicability of the arbitration clause contained in the Cardholder Agreement. (SA § I.H.) Counsel for the Parties also discussed a possible framework for resolving the matter in light of the information relevant to the allegations of the litigation. (SA § I.I.)

Over the following eleven weeks, counsel for the Parties continued settlement discussions via multiple telephone conferences, and exchanged proposals and counter-proposals regarding Class relief. (*Id.*) On October 6, 2016, the Parties reached an

---

[2] The information exchanged between counsel for the Parties confirmed that JC Montgomery and Kathleen Crook were not affected by the Service Disruption as they believed and they elected not to proceed as class representatives.

agreement in principle with regard to the material terms of the proposed settlement, as memorialized in the original Settlement Agreement. (*Id.*) The Parties did not discuss attorneys' fees, costs, and expenses prior to reaching a final agreement on relief for the Settlement Class, service awards for Class Representatives, and the remaining material terms of the proposed settlement. (SA § I.M).) On October 7, 2016, the Parties executed a settlement term sheet which memorialized all the essential terms of the Parties' settlement. (SA § I.N.) The Parties worked diligently together in preparing the settlement papers and a comprehensive notice program.

After hearing the Court's concerns raised during the preliminary approval hearing on January 12, 2017, counsel for the Parties renewed settlement negotiations via telephone conferences, and exchanged multiple proposals and counter-proposals regarding amendments to the Settlement. On February 13, 2017, the Parties executed the amended settlement agreement.

### C.  Overview of the Proposed Settlement

#### 1.  The Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class:

> All cardholders, as identified in Green Dot Defendants' business records, who attempted to and were unable to use their Green Dot issued, MasterCard-processed cards to access or spend their account funds from May 15, 2016 through May 22, 2016 as a result of the Service Disruption.

(SA, § III.2.) Excluded from the Settlement Class are the Court, the officers and directors of Defendants, persons who have been separately represented by an attorney and entered into a separate settlement agreement, and persons who timely and validly request exclusion from the Settlement Class. (*Id.* at § III.3).

#### 2.  Settlement Relief

The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the litigation and provide significant relief to the Settlement Class Members.

**Initial Fee Holiday and $50 Account Credit**: Without waiting for Court approval, Defendants provided two benefits to compensate some Settlement Class Members for inconveniences and losses as a result of the Service Disruption. Most Settlement Class Members with an active Green Dot account received a two-month Fee Holiday. (SA § IV.1(a).) During this period, these Settlement Class Members were not assessed any monthly maintenance fees on their Green Dot accounts. (*Id.*) As explained in the accompanying declaration of Teresa Watkins, most Settlement Class Members with an active Green Dot account also received a $50 credit to their account. (SA § IV.1(b).)

**Additional Tiered Relief:** Defendants have agreed to provide the following additional relief to the Settlement Class:

**Tier 1 Claims – Fee Holiday Extension**: Each Settlement Class Member will be entitled to a one-month extension of the Fee Holiday that Green Dot previously provided. Settlement Class Members will not be required to submit Claim Forms in order to receive compensation based on Tier 1 Claims. (SA § IV.2(a).) In addition to receiving benefits under Tier 1, Settlement Class Members may make a claim under either Tier 2 or Tier 3 to receive cash payments for losses incurred as a result of the Service Disruption, provided they meet the requirements described in the Settlement Agreement.

**Tier 2 Claims – Payments for Losses Without Documentation**: Settlement Class Members who attempted to and were unable to use their Prepaid Cards to access or spend their account funds from May 15, 2016 through May 22, 2016 as a result of the Service Disruption and suffered a loss as a result may submit a Claim Form without supporting documents to receive a payment of up to $100. (SA § IV.3(a).) Tier 2 payments will be reduced by any prior payments Settlement Class Members already received from Green Dot as restitution for the Service Disruption (e.g., $50 account credit and individual compensation provided by Green Dot), other than the Fee Holiday. (SA § IV.3(b).) Defendants have agreed to pay up to $2 million to satisfy valid Tier 2

claims. (SA § IV.3(c).) If the amount of valid Claims exceeds $2,000,000, all Tier 2 payments will be reduced on a *pro rata* basis. (*Id.*) If the amount of valid Claims is less than $2,000,000, the difference between the claimed amount and the Tier 2 Maximum shall be made available to expand the Tier 3 Maximum as described below. (SA § IV.3(a).)

**Tier 3 Claims – Payment for Substantiated Losses**: Settlement Class Members who were unable to use their Prepaid Cards to access or spend their account funds as a result of the Service Disruption and suffered loss may submit a Claim Form with documents to substantiate their losses to receive a payment of up to $750. (SA § IV.4(a).). Tier 3 payments will be reduced by any prior payments Settlement Class Members already received from Green Dot as restitution for the Service Disruption, other than the Fee Holiday. (SA § IV.4(b).) Defendants have agreed to pay up to $1.5 million to satisfy valid Tier 3 claims. (SA § IV.4(c).) Should the total value of valid Tier 3 claims exceed $1.5 million plus the rollover from Tier 2, then all payments will be reduced on a *pro rata* basis. (*Id.*)

**Minimum Contribution:** If the total value of valid Tier 2 and Tier 3 claims combined is less than $1.5 million, then the difference between the Minimum Payment and the amounts to be paid to Settlement Class Members for Tier 2 and Tier 3 claims shall be distributed to one or more *cy pres* recipients approved by the Court.

**Claims Verification Process**: These Tier 2 and Tier 3 Claims will be subject to a two-part verification process described below. (SA § IV.4(a).) Any Tier 3 Claims that are not supported by sufficient documentation will be reclassified and processed as Tier 2 Claims. (SA § IV.5(a).)

Settlement Class Members do not have to submit any Claim Form or documents to receive benefits under Tier 1. (SA § IV.6(a).) To receive cash payment under Tiers 2 and 3, however, Settlement Class Members must submit a valid Claim Form by the Claims Deadline. (SA § IV.6(b).) Under both Tiers, Settlement Class Members must submit, under penalty of perjury, an explanation as to what losses they incurred as a

result of the Service Disruption. (*Id.*) Green Dot will confirm, according to its business records, that the Settlement Class Member held a Prepaid Card at the time of the Service Disruption, attempted to and was unable to access or spend their account funds as a direct result of the Service Disruption, and was issued notice of this Settlement. (*Id.*) To receive payment under Tier 3, Settlement Class Members must also submit Reasonable Documentation to support their losses. (SA § IV.6(d).) Any Tier 3 Claim submitted without Reasonable Documentation shall be processed as a Tier 2 Claim. The on-line Claim Form will be coded such that a Claim cannot be submitted electronically without all of the required information in order to reduce deficiencies in submissions.

### 3. Administrative Costs

Defendants will pay the costs associated with providing notice to the Settlement Class and costs associated with administering the Settlement, including the costs of the Settlement Administrator. (SA §§ VI.3, VII.8.) The parties estimate such costs to be approximately $145,350, which will be paid separately by Defendants and will not reduce the relief provided for the Settlement Class. (*Id.*)

### 4. Release

In exchange for the benefits provided under the Settlement, Settlement Class Members will release Defendants and related entities from all known claims related to the alleged claims or events in the Actions, the Amended Consolidated Complaint or the Service Disruption as more fully described in the Settlement Agreement. (SA § IX.) Under the guidance of the Court, the parties have narrowed the Release, removing the California Section 1542 waiver. The Released Claims do not include any claims arising from or relating to any conduct by Defendants after the date the Settlement Agreement is executed. (*Id.*)

## III.   THE SETTLEMENT MERITS FINAL APPROVAL

Federal Rule of Civil Procedure 23 provides that "the claims, issues, or defenses of a certified class may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of Rule  23(e) is the protection of the class members,

including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 885-86 (C.D. Cal. 2016) (citing O*fficers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982)). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Id.* (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The court is tasked with examining the settlement for "overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

In order to approve a settlement in a class action, the court must conduct a three-step inquiry. First, it must assess whether defendants have met the notice requirements under the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1715(d). Second, it must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

### A. The Notice Requirements Were Appropriate And Have Been Satisfied.

First, as provided in the Settlement, Defendants served an amended notice of the proposed Settlement on the appropriate state officials in accordance with the requirements under the Class Action Fairness Act, 28 U.S.C. § 1715(b). *See* SA § V(2). As such, CAFA notice has been successfully completed and this factor weighs in favor of finally approving the Settlement.

Second, the notice issued to the Settlement Class was the "best notice . . . practicable under the circumstances" pursuant to Fed. R. Civ. P. 23(c)(2)(b). In its Preliminary Approval Order, the Court also approved the comprehensive notice program set forth in the Settlement Agreement. Notice was directly provided by U.S. Mail to the address on file in Green Dot's business records for each Settlement Class Member. Ex. A, Declaration of Ricky Borges, ¶ 6. Appropriate steps were also taken to

re-mail notices that are returned undeliverable and to locate current address information through the National Change of Address Database. *Id.* at ¶ 7. A website devoted to this Settlement was established and has been maintained by the Settlement Administrator. *Id.* at ¶ 14. The Settlement Website contains general information about the settlement, a long-form notice providing details of the settlement, online claim filing, Court documents and important dates and deadlines pertinent to this matter. *Id.* The Settlement Website also contains a toll-free number for claimants to contact the Settlement Administrator to request a claims package. *Id.* at ¶ 13. The Settlement Administrator worked with Class Counsel and counsel for Defendants to formulate the information provided on the case specific website particularly in the development of the frequently asked questions section. *Id.* at ¶ 14.

The notice plan was designed to reach as many of the Settlement Class Members as possible, and fully comports with due process under the circumstances of this case. The proposed notice plan thus provides the best method of notice practicable for the Class. *See, e.g.*, *Spann v. J.C. Penney Corp.* ("*Spann I*"), 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving substantially similar notice plan); *Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding best notice practicable where reasonable efforts were taken to ascertain class members addresses).

Indeed, in the Court's order preliminarily approving the Settlement, in observed that "there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members." *See* ECF No. 102 at 27. The Court further found that "the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members." *Id.* Thus, this factor also weighs in favor of finally approving the Settlement.

**B.    The Results of the Notice Program to Date**

The Settlement Administrator, Epiq Systems, mailed 57,808 initial notices. Borges Decl. ¶ 6. As of today, 219 claims have been submitted via mail and 16,145 claims have been submitted using the online claims portal, for a total of 16,364 claims.

*Id.* at ¶ 8. The claims have been categorized as follows: complete; incomplete; and denied. Of the claim forms received, 1,805 appear to be facially complete and 191 require further assessment as some required information appears to be missing. *Id.* For incomplete claims, these claimants will be mailed or emailed a notification of incomplete claim and will be given 30 days to cure the deficiency. If Tier 3 claims are not cured by providing the required supporting documentation for losses, they will be reclassified and processed as Tier 2 claims, subject to the maximum benefit of $100.00.

In the category of "denied" claims, upon initial review, the Settlement Administrator has determined that 14,368 claims do not match to the Settlement Class List data provided by Defendant Green Dot. *Id.* Epiq uses a multi-level matching process to match claims to the class list. This approach first looks for the unique claim number provided to each class member in the mailed direct notice and if no unique claim number is provided on the claim form, then looks at a combination of the claimant's first and last name and partial address, city, and state. *Id.* at ¶ 9. To confirm the validity and accuracy of the algorithm, Epiq randomly selected 100 unmatched claims for a manual review. The result was that 99 of the claims remained unmatched to the known class list.

The Parties, together with Epiq, have been discussing the unmatched claims and processes to address any concerns regarding the validity of the matching process used and to take all reasonable steps possible to ensure that proper claims are not excluded. One explanation for the unmatched claims is that the Settlement Website is open to the general public and claimants may file claim without using the assigned unique claim number. *Id.* at ¶ 11. Additionally, the claim form may be downloaded from the website or requested through the toll-free line. *Id.* Additionally, it has come to the Parties' attention that several websites and blogs[3] posted information regarding the Settlement

---

[3] See, e.g., http://www.classactionrebates.com/settlements/green-dot/;
http://www.hustlermoneyblog.com/green-dot-prepaid-card-class-action-lawsuit/;
https://dannydealguru.com/2017/07/26/green-dot-settlement/;

and some contained hyperlinks directly to the claim form such that the general information regarding the Settlement, particularly information as to the qualifications to be a class member, did not have to be viewed before the claim form was submitted.

In an effort to determine if any claims are unmatched due to technical errors, Epiq has proposed preparing and running a new level of street address matching in an attempt to find additional matches to the Settlement Class List. *Id.* at ¶ 10. Although this course of action would have caught only 1 of the randomly selected unmatched claims, the time required (4-5 hours) and the cost ($750) to implement this process convinced the parties that this was a reasonable step to take and have asked Epiq to move forward with this plan. Defendants have agreed to the additional cost of this step.

Although this additional matching code is expected to address the only deficiency of which Epiq is aware, out of an abundance of caution, the parties have requested Epiq to provide additional proposals. Another recommended approach is to notify affected claimants to provide them an opportunity to submit additional information, including the originally assigned unique claim number and additional address information. *Id.*

Whereas email addresses for Settlement Class Members were not available to use initially for the Notice Program, because claimants provided email addresses when submitting claims through the online claims portal, Epiq is now in possession of email addresses for the majority of the unmatched claims. Accordingly, this notification could now be efficiently sent via email to affected claimants. This email notification would include a hyperlink to a new online portal for submitting the needed additional information. This portal would only be accessible through the email hyperlink and otherwise not viewable or accessible to the general public in an effort to lower the risk of fraud.

For the small number of unmatched claimants that mailed paper claim forms without an email address, Epiq would prepare and send a mailed notification with a procedure for the claimants to submit via mail the additional information needed to verify their claims.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR

With the Court's approval, the Parties are prepared to instruct Epiq to undertake this process.  Accordingly, this procedure will be included in the proposed order on Final Approval as a condition subsequent.

Based on the foregoing, the Court should reaffirm that the Class Notice was "the best practicable notice to class members" and that it fairly and adequately informed the Settlement Class of the nature of the action, the terms of the proposed Settlement, the effect of the action and release of claims, and their rights to exclude themselves from or object to the Settlement.

### C.   The Settlement Is Fair, Reasonable, and Adequate.

In determining whether a settlement agreement is "fair, reasonable, and adequate," the court must weigh the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prod. Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011).

Finally, for settlements negotiated prior to formal class certification, courts should also "determine 'that the settlement is not the product of collusion among the negotiating parties.'" *Chambers*, 214 F. Supp. 3d at 886 (citing *Bluetooth*, 654 F.3d at 947).

### 1.   The strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation.

Under this factor, the Court assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Chambers*, 214 F. Supp. 3d at 888 (citing *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012)). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Adoma*, 913 F. Supp. 2d at 976.

Here, there was a significant risk that Defendants would move to compel individual arbitration if the case were to proceed. *See* ECF No. 102 at 22 (citing Declaration of John Yanchunis, ECF No. 76-8, at ¶ 9 ("During the investigative stage of this case, we discovered that affected consumers who make up the Settlement Class had agreed to arbitration in the event they pursued claims against Defendants.")). The Court found that "the risks of continued litigation are formidable, and the court takes these real risks into account." *Id.* Moreover, even if Plaintiffs prevailed on the arbitration issue, Defendants have maintained that the class certification is inappropriate because individualized factual inquiries and damages and legal variation among the law of the states. If Plaintiffs prevailed there, further expert discovery, potential interlocutory appeal under Rule 23(f), summary judgment proceedings, one or more class trials, and one or more post-trial appeals stood in the of a successful resolution for Plaintiffs. *Chambers*, 214 F. Supp. 3d at 888 (observing risks inherent in continued class action litigation and stating "the court finds it significant that the Class Members will receive immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation) (internal citation and quotation marks omitted).

In light of these difficult issues, the monetary benefits of the Settlement are appropriate and the timing in which the benefits will be provided is significant. Settlement Class Members  will receive benefits without taking any action; Defendants have paid or will pay those benefits automatically and immediately. Further, Settlement Class Members can receive compensation for losses without having the burden of providing any documentation to support their damages. Settlement Class Members with more significant losses may file supporting documentation to seek greater relief.

## 2.    The risk of maintaining class action status throughout the trial.

Plaintiffs had not filed a motion seeking to certify a litigation class prior to reaching this settlement. As such, there was a risk that the class would not be certified. Moreover, Plaintiffs sought the certification of a nationwide class under California law,

which is rare. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 585 (9th Cir. 2012) (order vacating class certification because the district court "erroneously concluded that California law could be applied to the entire nationwide class."); *Chambers*, 214 F. Supp. 3d at 888 (citing *Mazza*). Thus, the risk that a class could be certified and maintained throughout any trial was significant.

### 3. The amount offered in settlement.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In its preliminary approval order, the Court observed that relief offered by the Settlement "confers an adequate recovery for plaintiffs and the class members." ECF No. 102 at 21. Indeed, the Settlement has a value of up to $8,1000,000, which includes more than $3.3 million already provided through the Fee Holiday and the Courtesy Credit, the additional $1.1 million in individualized courtesy credits . . . the expected $250,000 value for Tier 1 awards, and the range of $1.5-3.5 million for Tier 2 and Tier 3 claims." *Id.* (citing Supplemental Declaration of John Yanchunis, ECF No. 90-2, at ¶ 13). As such, for the reasons identified by the Court in its order preliminarily approving the Settlement, this factor weighs in favor of final approval.

### 4. The extent of discovery completed and the stage of the proceedings.

The Parties did not engage in formal discovery, but exchanged a substantial amount of information through an informal process. As reflected in the Supplemental of Declaration of Teresa Watkins in Support of Preliminary Approval of the Settlement, Defendants were forthcoming with information related to the preparation for the processor conversion, the technical issues arising from the conversion and the identification of Class members. (ECF No. 90, Ex. 3.) The auditing conducted by Defendants during the conversion allowed Defendants to quickly identify which individual accounts were affected and how. The information shared through this

informal process provided a sound basis that allowed the Parties to weigh the terms of the Settlement against the risks of continued litigation. As the Court's preliminary approval order observed, some of the parties' counsel and the Defendants were involved in a similar service disruption matter, affording the parties information that could be used to set the amount of the settlement benefits in this case. (ECF No. 102 at 19.) "Thus, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions." (*Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); *Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. 10-3873, 2011 WL 320998, *9 (C.D. Cal. 2011) (same)).

### 5.    The experience and views of counsel.

The opinions of Plaintiffs' counsel and of the class representatives favor final settlement approval. As the Court previously recognized, Plaintiffs' counsel have extensive experience litigating consumer class actions and they support settlement approval. *See* ECF No. 102 (finding that "[b]ased on Yanchunis's representations and the firm resumes attached to his declaration, the court finds that plaintiffs' counsel are competent, and that the adequacy of representation requirement is satisfied."); *see also Chambers*, 214 F. Supp. 3d at 889 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.") (quoting *Nat'l Rural Telecommc'ns v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). Class Counsel have spent hundreds of hours becoming familiar with the strengths and weaknesses of Plaintiffs' claims while litigating this case. Class Counsel also have consulted with each of the class representatives regarding the proposed

Settlement, and each class representative has agreed to the Settlement. Thus, this factor also supports final approval of the Settlement.

### 6.  The presence of a governmental participant.

This factor is not applicable because there is no government participant in this matter. *See Wren v. RGIS Inventory Specialists*, No. 06-05778, 2011 WL 1230826, at *10, *supplemented by* 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

### 7.  The reaction of the class members of the proposed settlement.

Finally, it is well-established "that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class [action] settlement . . . are favorable to the class members." *Chambers*, 214 F. Supp. 2d at 890 (citing *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529). Here, the reaction from the Settlement Class Members as been resoundingly positive. To date, no class members have objected to the settlement and only one has opted out of the settlement.[4] Thus, this factor strongly favors the final approval of the settlement. *See, e.g.*, *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."); *Bautista v. Harvest Mgmt. Sub LLC*, No. 12-10004, 2014 WL 12579822, at *9 (C.D. Cal. July 14, 2014) ("The lack of objections and the low opt out rate supports approval of the settlement."); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (finding reaction of class members supported final approval when only one class member out of 1,837 opted out and there were no objections to the settlement); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354, 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members opted out, representing less than one percent and there were

---

[4] One request for exclusion was sent directly to counsel for Green Dot Corporation and to Epiq, but upon investigation of Green Dot's business records, it was determined that the individual was not a member of the Settlement Class and had not had an active Green Dot account for several years prior to the Service Disruption.

no objections to the settlement); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995, 2012 WL 2872788, * 16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out); *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938, 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighs in favor of approval of settlement when out of the 2,385 class members, there were no objections and only 56 class members opted out).

### D.     The Settlement Is Not the Product of Collusion.

Finally, because the Parties negotiated and reached a settlement prior to formal certification of the class, the court is tasking with ensuring the Settlement was not the product of collusion. *Bluetooth*, 654 F.3d at 947-48. Courts consider three factors to ensure the product is not the product of collusion: (1) whether counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.* None of these factors are present here.

First, counsel are not receiving a disproportionate distribution of the settlement. Counsel has moved the Court for an award of $750,000 in attorneys' fees. (ECF No. 104.) By contrast, the minimum value of the Settlement is approximately $5,014,134. (*Id.*) Thus, Counsel's requested fee is only 15% of the total relief provided to the Settlement Class.

Second, while counsel's fee is being paid separate from, and in addition to, the Settlement Relief, this supports approval here because it ensures the counsel's fees do not reduce the recovery of any of the Settlement Class Members. As the Ninth Circuit observed in *Bluetooth*, this factor weighs against approval when the class received no

monetary compensation, the monetary relief was a *cy pres* award, and the attorneys' fees were *eight times* the amount of the *cy pres* award. Here, the Settlement Class Members can make claims for monetary compensation and the amount of attorneys' fees is, at most, 15% of the total relief provided to the Settlement Class.

Third, there is no provision reverting any of the fees not awarded to Defendants. *Chambers*, 214 F. Supp. 2d at 892 (finding no reverter and no collusion).

Moreover, the Court previously recognized that the settlement was not the product of fraud or collusion because of the vigorous settlement negotiations between the Parties. The Court observed:

> During the July 15, 2016, settlement meeting, the parties "exchanged offers and counteroffers and negotiated the points of each vigorously." (Dkt. 76-8, Yanchunis Decl. at ¶¶ 11- 12). Following the initial settlement meeting, the parties continued settlement discussions, (see id. at ¶ 13), and on October 6, 2016, reached an agreement in principle regarding the material terms of the proposed settlement. (See id. at ¶ 14). As part of the discussions, the parties agreed, to the extent practicable, to model the Settlement Agreement after the settlement in the RushCard action, entitled Fuentes v. UniRush, LLC, Case No. 15-8372 (S.D.N.Y.) ("RushCard Action"). (Id. at ¶ 16; Dkt. 90-2, Yanchunis Supp. Decl. at ¶ 7). According to plaintiffs' counsel, "[e]very aspect of [the] Settlement Agreement was heavily negotiated, including each aspect of the Settlement Agreement and Exhibits, the release, and the claims process and notice program." (Dkt. 76-8, Yanchunis Decl. at ¶ 15; Dkt. 90-2, Yanchunis Supp. Decl. at ¶ 6).

(ECF No. 102 at 20.) As a result, the Court was "persuaded that the parties sufficiently investigated and considered their own and the opposing parties' positions" and that there was "no evidence that the settlement is 'the product of fraud or overreaching by, or collusion between, the negotiating parties.'" (*Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

**E.      The Settlement Class Still Satisfies the Requirements of Rule 23**

In its preliminary approval order, the Court certified the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3). (ECF No. 102 at 12-18.) No circumstances have changed or developed and, as such, Plaintiffs request that the Court affirm its order certifying the class for settlement purposes. *See Chambers*, 214 F. Supp. 2d at 887 ("Because circumstances have not changed, and for the reasons set forth in its Order of November 12, 2015, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).") (citing *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.")).

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval of the Settlement.

DATED: October 12, 2017                    Respectfully submitted,

                                            ***Attorneys for Plaintiffs and the
                                            Settlement Class***

                                            BY:    <u>*/s/ John A. Yanchunis*</u>
                                                    John A. Yanchunis

                                            **MORGAN & MORGAN
                                            COMPLEX LITIGATION GROUP**
                                            John A. Yanchunis
                                            201 North Franklin Street 7th Floor
                                            Tampa, Florida  33602
                                            (813) 223-5505
                                            (813) 223-5402 (fax)

**McCune Wright Arevalo, LLP**
Richard D. McCune
State Bar No. 132124
rdm@mccunewright.com
Ontario, CA 91761
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

**McCune Wright Arevalo LLP**
Joseph G. Sauder
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0580

**Law Office Of Jean Sutton Martin PLLC**
Jean Sutton Martin*
2018 Eastwood Road, Suite 225
Wilmington, North Carolina 28403
(910) 292-6676
(888) 316-3489 (fax)

**GIRARD GIBBS LLP**
Daniel C. Girard
State Bar No. 114826
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 2:16-cv-03557-FMO-AGR